64 P.3d 35 (2003)
STATE of Washington, Respondent,
v.
Boyd M. DEROUIN, Appellant.
No. 49255-1-I.
Court of Appeals of Washington, Division 1.
February 3, 2003.
Publication ordered February 27, 2003.
*36 Lisa Dworkin, Seattle, for Appellant.
Allyson K Zerba, Deanna Jennings Fuller, Seattle, WA, for Respondent.
APPELWICK, J.
The State contests the trial court's order suppressing a statement signed by the alleged victim, Michelle Derouin. Michelle's husband, Boyd Derouin was charged with domestic violence harassment. On the evening of the alleged crime, Michelle gave a statement to police claiming that Derouin had threatened her and destroyed personal property. Prior to trial, Michelle denied any knowledge of the alleged incident or her statement. The trial court denied the State's motion to admit the statement under ER 803(a)(5) as a past recorded recollection. The trial court, in its cautious ruling, erred as a matter of law by not applying the totality of the circumstances test adopted by this court in State v. Alvarado, 89 Wash.App. 543, 949 P.2d 831 (1998). In applying Alvarado, we conclude that there were sufficient indicia of accuracy for admission of Michelle's statement at the time the statement was adopted. We remand for further proceedings consistent with this opinion.

FACTS
On October 12, 2000, the State charged Boyd Derouin with domestic violence harassment pursuant to RCW 9A.46.020 for an incident involving his wife, Michelle Derouin. On December 14, 2000, the parties convened for trial. The trial court required that the admissibility of Michelle's prior statement to police be determined prior to trial. The State moved in limine to admit the statement pursuant to ER 803(a)(5).
At the hearing, the State called King County Sheriff's Deputy Paul Robinson to testify. Deputy Robinson testified that on the morning of July 20, 2000, he was dispatched to 17610 Southeast 400th Street. When Deputy Robinson arrived at the scene he spoke with Daniel Hano, Boyd Derouin's uncle, and some other officers about what was taking place. They believed that Derouin was still in the house. The officers surrounded the house and asked Derouin to come out. When they finally approached the house, they discovered that it was empty.
While searching the house, Deputy Robinson noticed a lot of damage to the interior. He took pictures of the damage.
Deputy Robinson testified that he spoke with Michelle Derouin a couple hours after his arrival at the Derouin residence. He took Michelle to his patrol car. Deputy Robinson explained:
[Michelle] sat next to me, I asked her what happened, what led up to this. She explained to me, I'd make notes. I get through, I read her the notes. Then I give them to her, she reads the notes and then she signs them and then I sign them.
Deputy Robinson also testified that he told Michelle that she could not lie. He told her that signing the statement was the same thing as lying while testifying. Michelle looked over the statement and then signed it. The trial court then admitted the statement for pretrial purposes only. The statement read:
I have been married to Boyd Derouin for four years. We have two children in common. I separated from Boyd at the end of May this year. Boyd has abused me in the past several times. He has injured me and I had to go to the hospital. On this day 7-20-00 I returned to our old house. I had been in Hawaii. Boyd was to have moved out while I was gone. I arrived at home about 02:00 am. Boyd was in the house waiting for me. We began to argue and I told him [to] leave. Boyd started to drink beer. I told him I wanted a divorce. He pulled out the phone wires and said he was going kill both of us. I left the house and drove to a friends. Police responded to my house, but Boyd was gone. He had damaged property, like furniture, before he left.
The statement also indicated that the Michelle had suffered "no injurys."
*37 The State next called Michelle Derouin. Michelle testified that she did not remember coming into contact with the police on July 20, 2000. Nor did she remember giving a statement to Deputy Robinson. When asked whether it was her signature on the bottom of the statement, Michelle testified: "That looks like my signature, yes." When asked whether she would normally sign something under penalty of perjury, Michelle responded:
Well I signed my mortgage papers without knowing what I'm doing. I mean I did and I called them and I said, Why has this happened? And he said, Well, you signed it, and I guess, you know, I did it before, I don't know. I don't remember, I don't remember signing it, I don't remember the whole incident and II mean.
Michelle also testified that she loved her husband.
Finally, the State called Boyd Derouin's uncle, Daniel Hano, to testify. Hano testified that he received a phone call from Michelle at 4:30 a.m. on July 20, 2000. Michelle told him that she had unexpectedly found Derouin at home when she returned from Hawaii. Michelle told Hano that she and Derouin had gotten into a "very heated argument." Michelle confided in Hano that Derouin was threatening to kill Michelle and himself. Michelle told Hano that Derouin had broken personal items and pulled the phone cords out of the walls.
The State then moved to admit the statement under ER 803(a)(5) and State v. Alvarado, 89 Wash.App. 543, 949 P.2d 831 (1998). The trial court ordered Michelle's statement suppressed. The court then found that its order had the practical effect of terminating the State's case pursuant to RALJ 2.2, and dismissed the case.
The State appealed the district court's decision in superior court (case # XX-X-XXXXX-X SEA). The superior court affirmed the district court, finding on appellate review that the district court "did not abuse its discretion in refusing to admit the statement pursuant to ER 803(a)(5)."
The State sought discretionary review in this court, and review was granted.

ANALYSIS
I. Standard of Review
The admission of statements under ER 803(a)(5) is reviewed for an abuse of discretion. State v. Castellanos, 132 Wash.2d 94, 97, 935 P.2d 1353 (1997). An evidentiary ruling that is based on an incomplete analysis of the law or one that is based on misapprehension of the legal issues may constitute an abuse of discretion because it is a decision based on untenable grounds. City of Kennewick v. Day, 142 Wash.2d 1, 5, 11 P.3d 304 (2000).
II. ER 803(a)(5) and Alvarado
The State argues that the trial court erred by not admitting Michelle's statement. Normally, hearsay statements are not admissible at trial. ER 803, however, carves out some specific exceptions. ER 803(a)(5) provides as follows:

Recorded Recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.
Admission under ER 803(a)(5) is proper when the following prongs are met:
(1) the record pertains to a matter about which the witness once had knowledge; (2) the witness has an insufficient recollection of the matter to provide truthful and accurate trial testimony; (3) the record was made or adopted by the witness when the matter was fresh in the witness' memory; and (4) the record reflects the witness' prior knowledge accurately.
Alvarado, 89 Wash.App. at 548, 949 P.2d 831 (citing State v. Mathes, 47 Wash.App. 863, 867-68, 737 P.2d 700 (1987); ER 803(a)(5)). The issue in this appeal is what evidence is sufficient to meet the fourth prong of this test.
*38 The State argues that under this court's decision in Alvarado, it had established the fourth prong and suppression of the statement was an abuse of discretion. In most jurisdictions, the foundation testimony to establish the fourth prong must come from the same declarant who gave the prior statement. See 5D Karl B. Tegland, Washington Practice: Courtroom Handbook on Washington Evidence § 5, at 366 (2003). This court rejected that requirement, however, in Alvarado. In Alvarado, this court addressed the issue of "whether the foundation requirements for admission of recorded recollections necessarily include the declarant's trial testimony that the statements were true when made." 89 Wash.App. at 545, 949 P.2d 831.
The Alvarado case involved three tape recorded statements made by a witness to a murder. Lopez, the witness, first told police that he had neither heard nor seen the murder. In Lopez's next two tape recorded statements, however, he told police that he had witnessed Alvarado commit the murder. At trial, Lopez testified that he did not recall the incident at all. Lopez stated that he remembered that the police recorded his statements, but claimed: "`I was so confused over the statement. Everybody had been telling me bits and pieces, so I couldn't really say it was true or not.'" Alvarado, 89 Wash.App. at 547, 949 P.2d 831. The trial court then admitted Lopez's recorded statements and Alvarado appealed.
On appeal, this court stated that, "[n]ormally the witness testifies that despite lack of memory, he [or she] remembers making the statement and that it was accurate when made." Alvarado, 89 Wash.App. at 550, 949 P.2d 831 (citing Robert H. Aronson, The Law of Evidence in Washington, 803-35.0 (1994)). The court acknowledged, however, that "what is ideal in theory may be some distance from what is possible in practice." Alvarado, 89 Wash.App. at 550, 949 P.2d 831. The court concluded that
the rule applies regardless of the declarant's availability to testify, and thus apparently does not contemplate that the declarant will always testify, let alone affirmatively vouch for the record's accuracy.
Alvarado, 89 Wash.App. at 550, 949 P.2d 831. The court then adopted a totality of the circumstances test by which courts were to determine the fourth prong of accuracy. Alvarado, 89 Wash.App. at 551, 949 P.2d 831 (citing U.S. v. Porter, 986 F.2d 1014, 1017 (6th Cir.1993) ("[a]dmissibility is ... to be determined on a case-by-case basis upon a consideration ... of factors indicating trustworthiness, or lack thereof")).
Here, the trial court concluded that Alvarado did not extend to the circumstances of this case. The trial court reasoned that it had
to follow [Alvarado] very narrowly and very carefully ... because this is a new expansion of law that is unique to this division of the state.
And it'sone other state, apparently Vermont, and I don't know what their history of this is, but this is not a generally acknowledged exception.[[1]]
The trial court distinguished this case from Alvarado in finding: *39 [Michelle Derouin] doesn't recall the statement at all, didn't even know there was a statement until you show it to her, apparently, can't verify its accuracy, and can't give us any support for it at all.
I think that's a difference in [Alvarado]. [Lopez] ... remembers the statement, remembers what heyou know, that he told the police those things, but he couldn't really say it was true or not at this time.
Thus, the trial court did not apply Alvarado, reasoning that Alvarado's holding could be limited only to the situation where the declarant can at least testify that they remember giving the statement.
The trial court was careful and cautious; however, its conclusion contradicts the logic of Alvarado. Alvarado abandons the requirement that the declarant testify at all, even though such testimony is ideal evidence of the statement's accuracy at the time of declaration. Instead, this court recognized that other evidence establishing the accuracy of the statement could be just as credible as, if not more so, than the declarant's testimony at trial that the statement was accurate when made. The logic behind Alvarado is especially relevant in cases of domestic violence, since the victim may have a stronger motive to forget the past statement than to remember it.
In adopting a totality of the circumstances test as opposed to the requirement that the declarant attest to the statements accuracy on the stand, the Alvarado court set forth several prongs that may be considered when determining indicia of reliability, including:
(1) whether the witness disavows accuracy; (2) whether the witness averred accuracy at the time of making the statement; (3) whether the recording process is reliable; and (4) whether other indicia of reliability establish the trustworthiness of the statement.
Alvarado, 89 Wash.App. at 552, 949 P.2d 831. In applying these prongs to Michelle's prior statement, we find sufficient indicia of reliability to admit the statement. First, Michelle never disavowed the accuracy of the prior statement, instead she denied any recollection of it. Second, at the time Michelle made the statement, she signed the statement as recorded by the officer after being warned that she was doing so under penalty of perjury.
The third Alvarado prong is not as clear cut. The recording process was not ideal. Deputy Robinson wrote his own version of Michelle's story. Such a recording process makes it more likely that the statement contained inaccuracies or statements flavored by the officer's perception of the events and not the actual witness's perception. However, the recording process was not so unreliable as to prevent the statement's admission. Any inaccuracies within the statement due to the recording process can be argued at trial and should go to the weight, not the admissibility of the evidence. Other prongs weigh towards the statement's accuracy. Deputy Robinson recorded Michelle's statement as she was giving it, which is arguably more reliable than cases where an officer writes out the statement after discussing its contents with the witness. Deputy Robinson also asked her to read the statement before signing it. The recording process was accurate enough in this case.
Finally, there were other sufficient indicia of reliability which weighed in favor of admitting the statement, including: (1) Hano's testimony regarding his phone call that morning from Michelle; (2) Michelle's description of the events of that morning to Hano were markedly similar to the statements she made in the past recorded recollection; (3) Hano's testimony thus supported the accuracy of the statement at the time it was made; and (4) Deputy Robinson also testified that he photographed a great deal of damage to personal property inside the Derouin residence. This testimony corroborates the accuracy of Michelle's prior statement.
The only facts going against admission are from Michelle's testimony. Her testimony alone, under Alvarado, is not enough to support suppression of the statement when there are sufficient indicia of the statements accuracy to admit it.

CONCLUSION
The trial court abused its discretion in failing to properly apply Alvarado. In applying *40 Alvarado's totality of the circumstances test to this case, we find sufficient indicia of its reliability and admit Michelle's past recorded recollection. The issue here is not whether the statement is admissible, but the weight to be accorded to the statement in the face of Michelle's current testimony. We remand for further proceedings consistent with this opinion.
COLEMAN, J., and SCHINDLER, J., concur.
NOTES
[1] In applying a totality of the circumstances test to admit a past tape recorded statement, a Vermont court reasoned:

A number of courts have ruled statements inadmissible as past recollection recorded because the statements were not sworn, signed by the witnesses, or otherwise affirmed by the witness as accurate. Closer examination of those cases reveals, however, that the statements involved were not prepared by the witness, but by another person, usually a law enforcement agent. See, e.g., United States v. Schoenborn, 4 F.3d 1424, 1427 (7th Cir.1993) (noting that witness "did not adopt... as his own" report prepared by FBI agent of interview with witness); People v. Hoffman, 205 Mich.App. 1, 518 N.W.2d 817, 825 (1994) (holding that denying admission of police officer's typewritten notes of witness's statement was proper where witness never adopted statements as true and accurate); People v. Kubasiak, 296 N.W.2d at 302 (holding that police report of witness's statement was inadmissible because witness had not adopted report as accurate when matter was fresh in his memory). Understandably, where a prior statement was prepared by a person other than the witness, courts have relied on or even required evidence that the witness had sworn or otherwise affirmed the accuracy of the prepared statement, to satisfy the requirement that the witness adopted the statement.
State v. Marcy, 165 Vt. 89, 680 A.2d 76 (1996).