FILED
COURT OF APPEALS
DIVISION II

2015 MAR 31 AM 8: 35

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44906-4-II |
| Respondent, | |
| v. | |
| ROBERT E. JAMES, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Robert E. James appeals his jury conviction for rape in the second degree.[1] He argues that the trial court abused its discretion by admitting the survivor's statement as recorded recollection under ER 803(a)(5), and that the State presented insufficient evidence to prove beyond a reasonable doubt that James committed rape in the second degree. In his statement of additional grounds (SAG), James further asserts that the trial court erred by instructing the jury on defense of consent, the trial court improperly instructed the jury on the lesser degree rape in the second degree, and ineffective assistance of counsel. Rejecting James's arguments, we affirm.

## FACTS

### I.    SUBSTANTIVE FACTS

On June 30, 2012, S.C. was inebriated and accepted a ride from James as she stumbled down the road. After driving around and purchasing alcohol, they went to the Thunderbird Motel and rented a room. A motel employee, Charlie Kim, saw S.C. in James's car drinking whiskey, and saw S.C. and James "hugging and kissing in the parking lot." Report of Proceedings (RP) (Mar. 26, 2013) at 38.

---

[1] RCW 9A.44.050

A number of tenants at the motel became involved, including Wendy Taylor and Christa Anderson. Wendy Taylor heard screaming coming from James's room. She described what she heard as "crying, screaming real bad, somebody got hurt." RP (Mar. 26, 2013) at 53. The next morning, Kim found S.C. in the doorway of the motel room. S.C. was nude and had blood on her. She said to Kim, "'Rape, rape. I'm hurt, hurt. Call the police.'" RP (Mar. 26, 2013) at 36.

Kim asked another tenant, Christa Anderson, to help S.C. Anderson observed blood and feces on the back of S.C.'s leg. As she helped S.C. get dressed, S.C. was in pain and said she was "raped." RP (Mar. 26, 2013) at 62. S.C. told Anderson she was raped "from her back side." RP (Mar. 26, 2013) at 64. Anderson knew S.C. and said S.C. was groggy, drowsy, and "droggier [sic] than normal." RP (Mar. 26, 2013) at 63. Additionally, Anderson observed a "trashed" motel room with the phone ripped out of the wall. RP (Mar. 26, 2013) at 62.

Law enforcement responded and transported S.C. to the hospital where Officer Jason Capps interviewed her, shortly after S.C.'s arrival. During the interview, he observed a bruise on S.C.'s neck. Officer Capps obtained a written statement from S.C. S.C. could not write at that time, so Officer Capps wrote the statement for her and read it back to her. When Officer Capps showed S.C. a photo lineup, she identified James as the man who raped her. S.C. testified that the man in the photo lineup is the same person she was with in the motel room.

Nurse Miriam Thompson examined S.C. Thompson observed a milky white liquid between S.C.'s buttocks cheeks and obtained an anal swab. During the examination, S.C. reported that James anally penetrated her with his penis. S.C. further stated that James, while on top of S.C., had his hands around her neck and strangled her. Thompson observed small red marks on S.C.'s neck, but no blood. Thompson also noted that S.C. had a clear voice, could swallow and drink, and did not have tissue swelling to her airway. During the exam, S.C. told Thompson that

2

she had multiple personalities. However, Thompson testified that she didn't recognize any odd personality when she examined S.C.

The medical staff diagnosed S.C. with an anal tear. As a result of the assault, she spent ten days in the hospital, required three surgeries, and needed a colostomy bag for two months.

The police investigation of the motel room revealed several empty and partially empty alcohol containers. Various articles of clothing were scattered around the room, including S.C.'s underwear and a pair of James's underwear, both stained with James's blood. The bathroom sink of the motel room contained a white washcloth with blood and feces on it.

James provided a DNA[2] sample to law enforcement. The State presented evidence that a swab from S.C.'s neck contained a mixed DNA profile consistent with James and S.C. The entire male DNA located on S.C. matched James. The anal swab obtained from S.C. contained P30, a protein commonly found in semen. However, it could not be matched to a DNA profile because it did not contain sperm cells or ejaculate.

The State, by amended information, charged James with rape in the first degree.[3]

II.   RECORDED RECOLLECTION

Before trial, the State notified the court that it expected S.C. to have considerable difficulty remembering the events of June 30 to July 1, 2012. Therefore, the State expected to offer S.C.'s statement to Officer Capps under the recorded recollection exception to the hearsay rule.[4] As anticipated, S.C. proved to have insufficient recollection to testify fully and accurately. S.C. testified that her problem with alcohol affects her long-term memory. She had trouble

---

[2] Deoxyribonucleic acid.

[3] RCW 9A.44.040(1)

[4] ER 803(a)(5)

remembering everything that happened, but did recall being in the motel room. She remembered "crawl[ing] over to the door" nude to seek help because her stomach and "behind" hurt too much to walk. RP (Mar. 26, 2012) at 8, 9.

During trial, the State questioned S.C. about her statement to Officer Capps, and S.C. identified her signature on the statement. She initially testified that she may have signed an inaccurate statement. However, S.C. also testified that it would be her normal habit to tell the truth to a police officer and that the information she gave to Officer Capps is what she remembered happening. Officer Capps testified that S.C. was coherent, cooperative, and did not have trouble communicating when she made the statement. She signed the statement voluntarily.

After hearing the statement and the testimony of S.C. and Officer Capps, the trial court excused the jury, heard argument, and found that the State demonstrated the necessary foundation ER 803(a)(5) requires and admitted S.C.'s statement. The court commented,

> I don't think [S.C.] was at all trying to portray that it's not what she said to the officer[,] . . . she, in fact, was doing her best I guess at the time to state what happened accurately. The officer who was taking it down said he [did so] accurately, he read it back to her and she agreed that that's what she recalled subjectively.

RP (Mar. 26, 2013) at 101.

III. JURY INSTRUCTIONS

The State proposed a jury instruction on the lesser included crime of rape in the second degree. James objected to the instruction on the grounds that the State had not offered sufficient evidence of mental incapacity. The trial court overruled his objection and submitted the instruction to the jury. The jury returned a verdict finding James guilty of rape in the second degree. James appeals.

## ANALYSIS

I.   PAST RECOLLECTION RECORDED

James argues that the trial court abused its discretion by admitting the statement because the State did not prove by a preponderance of the evidence that the statement pertains to a matter about which S.C. once had knowledge, that S.C. made the statement when the matter was fresh in her memory, and that the record reflects S.C.'s prior knowledge accurately. We disagree and hold that the trial court did not abuse its discretion.

### A.   Standard of Review

We review admission of statements under ER 803(a)(5) for an abuse of discretion. *State v. Derouin*, 116 Wn. App. 38, 42, 64 P.3d 35 (2003). "A trial court abuses its discretion if it improperly applies an evidence rule." *State v. Nava*, 177 Wn. App. 272, 289, 311 P.3d 83 (2013, *review denied*, 179 Wn.2d 1019 (2014). The proponent of the statement must establish the elements of a required foundation by a preponderance of the evidence. *State v. Benn*, 120 Wn.2d 631, 653, 845 P.2d 289 (1993). "The preponderance of the evidence standard requires that the evidence establish the proposition at issue is more probably true than not true." *Mohr v. Grant*, 153 Wn.2d 812, 822, 108 P.3d 768 (2005). We uphold the trial court if its determination of the preliminary questions is supported by substantial evidence. *Benn*, 120 Wn.2d at 653. Substantial evidence is evidence sufficient to persuade a rational, fair-minded person of the asserted premise. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

### B.   The Trial Court Properly Admitted S.C.'s Statement as a Recorded Recollection

A recorded statement given to police is inadmissible hearsay unless it falls under an exception to the hearsay rule. ER 802. ER 803(a)(5) is one such exception.

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify

fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

ER 803(a)(5). "A recorded recollection is admitted as substantive evidence." *Nava*, 177 Wn. App. at 290.

Before a recorded recollection may be admitted, the proponent of the evidence must demonstrate, by a preponderance of the evidence, that:

(1) the record pertains to a matter about which the witness once had knowledge, (2) the witness has an insufficient recollection of the matter to provide truthful and accurate trial testimony, (3) the record was made or adopted by the witness when the matter was fresh in the witness's memory, and (4) the record reflects the witness's prior knowledge accurately.

*Nava*, 177 Wn. App. at 290.

1.      The record pertains to a matter about which S.C. once had knowledge.

Substantial evidence supports the trial court's findings that the statement pertained to a matter about which S.C. once had knowledge, and that S.C. made the statement while the matter was fresh in her memory. Though S.C. may have been under the influence of alcohol at the time of the assault, she had knowledge of what happened to her. She conveyed to the officer what happened to her during the sexual assault in a coherent manner.

2.      S.C. had an insufficient recollection of the matter to provide truthful and accurate trial testimony.

The record clearly demonstrates S.C.'s insufficient recollection at trial about what happened to her. S.C. testified that she could not remember how she got from James's car to the motel room. When asked what happened in the motel room, S.C. testified, "I don't remember anything." RP (Mar. 26, 2013) at 8. Although she testified that she remembered being in the motel room and seeking help, S.C. could not testify about the sexual assault.

3.    The record was made and adopted by S.C. when the matter was fresh in her memory.

S.C. went immediately from the motel room in which the incident occurred to the hospital where Officer Capps took her statement shortly after S.C.'s arrival. She signed the statement immediately after making it. Accordingly, the matter was fresh in her memory at the time she made the statement.

4.    The record reflects S.C.'s prior knowledge accurately.

ER 803(a)(5)'s language does not require that the witness testify or personally vouch to the accuracy of the recorded statement. *Nava*, 177 Wn. App. at 293. "[O]ther evidence establishing the accuracy of [a recorded recollection] could be just as credible as, if not more so, than the declarant's testimony at trial that the statement was accurate when made." *Derouin*, 116 Wn. App. at 46. To determine whether the record accurately reflects the witness's prior knowledge,

> [t]he court must examine the totality of the circumstances, including (1) whether the witness disavows accuracy; (2) whether the witness averred accuracy at the time of making the statement; (3) whether the recording process is reliable; and (4) whether other indicia of reliability establish the trustworthiness of the statement.

*State v. Alvarado,* 89 Wn. App. 543, 551-52, 949 P.2d 831 (1998).

Although S.C. initially testified that she may have been incapable of correcting a police officer and would have signed an inaccurate document, she ultimately testified that the information she gave to Officer Capps is what she remembered happening. S.C. testified that it "seems like" she had a recollection of what happened immediately following the events. RP (Mar. 26, 2013) at 13. Contrary to James's argument, S.C. signed the statement and identified her signature on it at trial. S.C. also testified that it is her normal habit to tell the truth to a police officer. She never recanted the statement. Thus, she never disavowed accuracy of the statement.

7

S.C. averred accuracy at the time of making the statement. While speaking to Officer Capps, S.C. did not suggest that she was unsure of what she remembered. Officer Capps wrote S.C.'s statement for her, then reread it and asked her to tell him if anything needed to be changed or taken out. She did not make any changes, and then signed the statement voluntarily. Officer Capps advised S.C. that she did not have to sign the statement and did not make any promises to her.

The recording process is reliable because Officer Capps wrote S.C.'s statement and read it back to her. The record contains no suggestion that the written statement does not accurately reflect S.C.'s account of her experience.

Finally, other indica of reliability support admission of the statement. S.C. did not have any trouble communicating with Officer Capps. He testified that, although S.C. appeared to be in pain, she was coherent and able to make a coherent statement. The contents of the statement were corroborated in varying degrees by the physical evidence and testimony of other witnesses.

Substantial evidence supports the trial court's findings and that the State proved all the foundational elements by a preponderance of the evidence. We hold that the trial court did not abuse its discretion when it admitted S.C.'s statement to Officer Capps.

II.    SUFFICIENCY OF THE EVIDENCE

A.    Standard of Review

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence

are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "Credibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

B.      Rape in the Second Degree

James argues that the State did not provide sufficient evidence to support a conviction of rape in the second degree. Specifically, he argues insufficient evidence existed to prove that sexual intercourse occurred, that James used forcible compulsion to overcome S.C.'s resistance, and that S.C.'s incapacitation prohibited her from consenting. We disagree.

To support a conviction of rape in the second degree, the State had to prove beyond a reasonable doubt that James, under circumstances not constituting rape in the first degree, engaged in sexual intercourse with S.C. by forcible compulsion, or, alternatively, when S.C. was incapable of consent by reason of being physically helpless or mentally incapacitated. RCW 9A.44.050(1)(a) and (b). When viewed in the light most favorable to the State, sufficient evidence exists to convince the jury that the sexual intercourse occurred by forcible compulsion and that S.C.'s intoxication made her unable to understand the nature or consequences of sexual intercourse at the time it occurred.

C.      The Record Contains Sufficient Evidence to Support the Conviction

1.      Sexual Intercourse

Sexual intercourse is defined as "the sexual organ of the male entered and penetrated the sexual organ of the female . . . however slight" or "any penetration of the . . . anus however slight, by an object, including a body part." Clerk's Papers (CP) at 47 (Instr. 5); *see also* RCW 9A.44.010(1).

Kim, Anderson, and Officer Capps each testified at trial that S.C. said she was raped. Anderson observed blood and feces on the back of S.C.'s leg the morning of July 1, 2012. S.C. told Thompson that James anally penetrated her with his penis. A lab test detected a protein commonly found in semen on the anal swab taken from S.C. on July 1, 2012. Medical staff diagnosed and treated S.C. for an anal tear. Additionally, Thompson observed a milky white liquid between S.C.s buttocks cheeks. James admitted that he attempted to have sexual intercourse with S.C. When viewed in the light most favorable to the State, a rational fact finder could find that sufficient evidence existed to prove beyond a reasonable doubt that sexual intercourse occurred.

2.    Forcible Compulsion

"Forcible compulsion" means "physical force that overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury." CP at 47 (Instr. 6); see also RCW 9A.44.010(6). "[F]orcible compulsion is not the force inherent in any act of sexual touching, but rather is that 'used or threatened to overcome or prevent resistance by the [victim].'" State v. Ritola, 63 Wn. App. 252, 254-55, 817 P.2d 1390 (1991) (quoting State v. McKnight, 54 Wn. App. 521, 527, 774 P.2d 532 (1989)).

Here, Thompson testified that S.C. told her "[James] held her down with his hands around her neck and his body weight on top of her" and "strangled her." RP (Mar. 27, 2013) at 59. Thompson observed a bruise on S.C.'s left knee and marks on her neck. Officer Capps also observed bruises on both sides of S.C.'s neck and a scrape on her bicep. When viewed in the light most favorable to the State, a rational fact finder could find that sufficient evidence existed to prove beyond a reasonable doubt that that James used forcible compulsion to overcome S.C.

### 3. Mental Incapacity

"Consent" means "that at the time of the act of sexual intercourse there are actual words or conduct indicating freely given agreement to have sexual intercourse." CP at 48 (Instr. 10); *see also* RCW 9A.44.010(7). "Mental incapacity" is a "condition existing at the time of the offense that prevents a person from understanding the nature or consequences of the act of sexual intercourse whether that condition is produced by illness, defect, the influence of a substance, or from some other cause." CP at 48 (Instr. 11); *see also* RCW 9A.44.010(4).

S.C. began drinking alcohol at 8:00 A.M. on June 30, 2012. S.C. is approximately five feet tall and weighs 115 pounds. She drank approximately 24 ounces of "[h]igh [g]ravity" beer before leaving her apartment and was "[p]retty intoxicated." RP (Mar. 26, 2012) at 6, 7. Additionally, James purchased beer, including the "high gravity type of beer" that S.C. requested. RP (Mar. 27, 2013) at 113. He knew S.C. consumed alcohol, including whiskey, and that they "got obviously a little too drunk." RP (Mar. 27, 2013) at 99. Anderson testified that S.C. seemed "like she had taken something," and that S.C. was groggy and drowsy on the morning after the sexual assault. RP (Mar. 26, 2012) at 68.

"A finding that a person is mentally incapacitated for the purposes of RCW 9A.44.010(4) is appropriate where the jury finds the victim had a condition which prevented him or her from *meaningfully* understanding the nature or consequences of sexual intercourse." *State v. Ortega-Martinez*, 124 Wn.2d 702, 711, 881 P.2d 231 (1994). When viewed in the light most favorable to the State, a rational fact finder could find that sufficient evidence existed to prove beyond a reasonable doubt that S.C. was debilitated by intoxicants at the time of sexual intercourse and was incapable of meaningfully understanding the nature or consequences of sexual intercourse at the

time it occurred because she was intoxicated. Sufficient evidence supports all the elements of rape in the second degree.

III   STATEMENT OF ADDITIONAL GROUNDS

In his SAG, James further asserts that the trial court erred by instructing the jury on defense of consent, the trial court improperly instructed the jury on the lesser included rape in the second degree offense, and he received ineffective assistance of counsel. We hold that the trial court did not err by instructing the jury on consent because it did not provide such instruction, the trial court properly instructed the jury on the lesser included rape in the second degree offense, and that James's counsel was not ineffective.

A.   No Consent Instruction

James asserts that the trial court improperly instructed the jury on consent as an affirmative defense. James is correct that he did not present a defense of consent at trial. Therefore, such an instruction to the jury would be error. But the trial court did not instruct the jury on a defense of consent. Accordingly, the trial court did not err.

B.   Rape in the Second Degree Instruction

James asserts that because the record contains no affirmative evidence that only rape in the second degree occurred, the trial court erred by instructing the jury on the lesser degree crime of rape in the second degree. We disagree.

A trial court's decision about whether to instruct on a lesser degree offense involves the application of law to facts that we review de novo. *State v. Fernandez–Medina*, 141 Wn.2d 448, 454, 6 P.3d 1150 (2000) (quoting *State v. Peterson*, 133 Wn.2d 885, 948 P.2d 381 (1997, three-part test that includes legal and factual components); *State v. Dearbone*, 125 Wn.2d 173, 178, 883 P.2d 303 (1994) (noting that mixed questions of law and fact are reviewed de novo). A jury may

return a guilty verdict to a lesser degree crime of the one charged.[5] A crime is an inferior degree crime when

> (1) the statutes for both the charged offense and the proposed inferior degree offense 'proscribe but one offense'; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense.

*Peterson*, 133 Wn.2d at 891 (quoting *State v. Foster*, 91 Wn.2d 466, 472, 589 P.2d 789 (1979); *State v. Daniels*, 56 Wn. App. 646, 651, 784 P.2d 579 (1990)). Here, James argues that the evidence at trial was insufficient to establish that he committed only rape in the second degree.

Recently, we addressed a similar issue in *State v. Corey*, 181 Wn. App. 272, 325 P.3d 250, *review denied*, 181 Wn.2d 1008 (2014). In that case, we explained the standard for determining when a trial court may instruct a jury on a lesser degree offense as follows:

> When determining whether the evidence at trial was sufficient to support the trial court's giving of a lesser-degree offense jury instruction, we view the supporting evidence in the light most favorable to the instruction's proponent, here the State. *Fernandez–Medina*, 141 Wn.2d at 455-56. But such supporting evidence must consist of more than the jury's disbelief that the defendant committed the greater-degree offense and, instead, must affirmatively establish that the defendant committed the lesser-degree offense. *Fernandez–Medina*, 141 Wn.2d at 456. A trial court should give a requested lesser-degree jury instruction "'[i]f the evidence would permit a jury to rationally find a defendant guilty of the lesser offense and acquit him of the greater.'" *Fernandez–Medina*, 141 Wn.2d at 456 . . . (quoting *State v. Warden*, 133 Wn.2d 559, 563, 947 P.2d 708 (1997)).

*Corey*, 181 Wn. App at 276.

---

[5] RCW 10.61.003 provides

> Upon an indictment or information for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto, or of an attempt to commit the offense.

In *Corey*, we determined that the evidence supported giving a lesser degree instruction because the victim's testimony, if believed, could support both a finding of forcible compulsion and a finding of no forcible compulsion based on the legal definition of forcible compulsion. 181 Wn. App. at 280. In that case, the victim's description of the defendant's conduct was vague and did not describe the level of force the defendant used to achieve sexual intercourse. *Corey*, 181 Wn. App. at 280.

Here, the State charged James with rape in the first degree.

> A person is guilty of rape in the first degree when such person engages in sexual intercourse with another person by forcible compulsion where the perpetrator . . . [i]nflicts serious physical injury.

RCW 9A.44.040(1)(c). The elements of rape in the second degree are:

> A person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person . . . [b]y forcible compulsion . . . [or] [w]hen the victim is incapable of consent by reason of being physically helpless or mentally incapacitated.

RCW 9A.44.050(1)(a) & (b).

The facts in this case are analogous *Corey*. As discussed above, the evidence is sufficient to support a finding that S.C. was incapable of consent by reason of being mentally incapacitated. But the evidence, if believed, supports both a finding that James used forcible compulsion and a finding that James did not use forcible compulsion.[6] The jury could believe the evidence regarding the force used by James and still find that his conduct did not amount to forcible compulsion. The State presented evidence that James had his hands around S.C's neck with his body weight on top of her, strangling her. The State also presented evidence of resulting injuries: the marks on S.C.'s

---

[6] There is no dispute that the rape resulted in S.C.'s serious physical injuries. However, contrary to James's assertion in his SAG, the issue regarding the lesser degree offense turns on forcible compulsion because serious physical injury doesn't elevate the crime of rape in the second degree because of a victim's mental incapacity to rape in the first degree.

neck and knees. But, other evidence established that the marks on S.C.'s neck were small and not bleeding. Additionally, Thompson testified that S.C. showed no other signs of strangulation because she had a clear voice, could swallow and drink, and did not have tissue swelling to her airway.

Assuming the jury believed S.C.'s statements and other witness' observations, it could have determined that the level of force used was the equivalent of forcible compulsion. However, the jury could consider this evidence, in conjunction with Thompson's testimony, and determine that the alleged force did not rise to the level of forcible compulsion. Accordingly, following the reasoning in our opinion in *Corey*, the trial court properly instructed the jury on both rape in the first degree and rape in the second degree.

### C.    Ineffective Assistance of Counsel

Ineffective assistance of counsel is a mixed question of law and fact that we review de novo. *Strickland v. Washington*, 466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant claiming ineffective assistance of counsel has the burden to establish that (1) counsel's performance was deficient and (2) the performance prejudiced the defendant's case. *Strickland*, 466 U.S. at 687. Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700. An attorney's performance is deficient if it falls "below an objective standard of reasonableness based on consideration of all the circumstances." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Deficient performance prejudices a defendant if there is a "reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

Our scrutiny of counsel's performance is highly deferential; we strongly presume reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To rebut this presumption, a defendant bears the burden of establishing the absence of any legitimate trial tactic explaining counsel's performance. *Grier*, 171 Wn.2d at 33. If defense counsel's trial conduct is a legitimate trial strategy or tactic, it cannot serve as a basis for an ineffective assistance of counsel claim. *State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 177 (1991), *cert. denied*, 506 U.S. 856 (1992).

### 1. Defense of Consent Instruction

James argues his trial counsel's performance was deficient for failing to object to the defense of consent instruction. Because the trial court did not instruct the jury on consent, this argument is without merit.

### 2. Motion to Suppress

James argues that his trial counsel's performance was deficient for failing to move to suppress the initial identification of James based on the photo montage. To pursue an ineffective assistance of counsel argument on the basis of failure to seek suppression, James must establish that a motion to suppress likely would have been granted. *See State v. Walters*, 162 Wn. App. 74, 81, 255 P.3d 835 (2011). Here, the record on appeal provides insufficient evidence for us to determine if a motion to suppress would have been granted. *See Walters*, 162 Wn. App. at 81.

### 3. Psychiatric Examination of S.C.

James argues that his trial counsel's performance was deficient for failing to move for a "psychiatric examination" of S.C. SAG at 13. A psychiatric examination may be ordered only upon a "compelling reason" for doing so. *State v. Demos*, 94 Wn.2d 733, 738, 619 P.2d 968 (1980). James fails to identify any compelling reason in the record that would "overcome the strong presumption that psychological examinations of witnesses to crimes shall not be allowed"

16

and justify a mental health examination of S.C. *State v. Israel*, 91 Wn. App. 846, 853, 963 P.2d 897 (1998). Accordingly, James cannot establish that defense counsel's performance was deficient for failing to seek an examination.

    4.    Witnesses

James argues that his trial counsel's performance was deficient for failing to present experts to testify regarding S.C.'s mental health. The decision whether to call a witness is generally presumed to be a matter of trial strategy or tactics. *State v. Thomas*, 109 Wn.2d 222, 230, 743 P.2d 816 (1987). This presumption may be overcome by showing that the witness was not presented because counsel failed to conduct appropriate investigations. *Thomas*, 109 Wn.2d at 230. James fails to show that his trial counsel failed to conduct appropriate investigations. Additionally, James fails to show that he was prejudiced by this alleged error. Accordingly, this claim is without merit.

Additionally, James argues deficient performance because his counsel did not present other witnesses to testify to the presence of another person in the motel room. James does not identify any additional witnesses his counsel should have obtained or what testimony they may have offered. Any fact related to the investigation and decision to call witnesses is outside of the record on appeal. We do not address issues relying on facts outside the record on direct appeal. *McFarland*, 127 Wn.2d at 335, 338 n.5.

    5.    Cross-Examination of S.C.

James argues that his trial counsel's performance was deficient for failing to question S.C. on cross-examination about whether James is the person who "assault[ed]" her. SAG at 16. Decisions regarding cross-examination are often tactical because cross-examination may not provide evidence useful to the defense, or it may open the door to damaging rebuttal. *In re Pers.*

*Restraint of Brown*, 143 Wn.2d 431, 451, 21 P.3d 687 (2001). James fails to show that there is no conceivable legitimate tactic explaining his counsel's performance. *See Grier*, 171 Wn.2d at 33. Because James cannot establish that defense counsel's performance was deficient, his ineffective assistance counsel fails.

6.      DNA Investigation

Finally, James argues that his trial counsel failed to adequately investigate the DNA report, therefore resulting in an inadequate trial strategy. The facts related to the development of trial strategy are outside of the record on appeal. We do not address issues relying on facts outside the record on direct appeal. *McFarland*, 127 Wn.2d at 338 n.5.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, J.

Bjorgen, A.C.J.