IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 79919-3-I |
| Respondent, | |
| v. | DIVISION ONE |
| PHILIP KEITH TRAINI, | UNPUBLISHED OPINION |
| Appellant. | |

CHUN, J. — Two no-contact orders (NCOs) prohibited Philip Traini from going near his former girlfriend's residence or having any contact with her. He violated those orders by going to her home and grabbing her face. A jury found Traini guilty of misdemeanor violation of an NCO and felony assault in violation of an NCO. Traini appeals.

As the State concedes, the convictions together violate the double jeopardy clause. But the trial court did not abuse its discretion in admitting the victim's written statement as a recorded recollection. Nor does Traini establish that any prosecutorial misconduct was prejudicial. We thus vacate the misdemeanor conviction and affirm the felony conviction.

BACKGROUND

K.S. is Traini's former girlfriend. Two NCOs prohibited Traini from going within 1,000 feet of K.S.'s residence or having any contact with her. On February 2, 2019, Traini went to K.S.'s home and grabbed her face. In a

Citations and pin cites are based on the Westlaw online version of the cited material.

statement, K.S. said that because of an abscessed tooth, she experienced much pain. K.S. then left her home, called 911, and walked to retrieve her car, which was parked nearby. During the 911 call, K.S. cried and stated that Traini had attacked her. She also stated that she did not feel comfortable waiting on the street for an officer to arrive. Officer Joshua Holt met K.S. at her home and interviewed her. He then accompanied her to the police station so he could have her complete a written statement. He testified at trial that he did this based on K.S.'s tendency to fail to complete written statements in the past, despite agreeing to do so. Officer Holt had responded before to a number of 911 calls from K.S. about Traini.

The State charged Traini with burglary in the first degree, felony assault in violation of an NCO, obstructing a law enforcement officer, residential burglary, and misdemeanor violation of an NCO.

At the start of trial, K.S. moved to rescind the NCOs. She told the court that she "didn't ever feel in danger or in fear of Mr. Traini." She appeared to express that she was unhappy that the State was prosecuting Traini. The trial court denied her motion.

Later, during trial, the trial court admitted the 911 call into evidence. K.S. testified that Traini had simply grabbed her jaw while he was at her home and that he had not hurt her. She also testified that she was not "attacked" and that she was surprised she had said she was uncomfortable on the street in the 911 call. She testified that she had been exaggerating during the call. Over Traini's

objection, under ER 803(a)(5), the trial court allowed K.S.'s written statement to be read into evidence.

Officer Holt testified about his impression of K.S. on the date of the incident. He said that when he interviewed K.S., she started to cry, which he found unusual based on his prior interactions with her.

The jury found Traini guilty of misdemeanor violation of an NCO and felony assault in violation of an NCO and not guilty on the remaining charges.

## ANALYSIS

A. Double Jeopardy

Traini says that his convictions for misdemeanor violation of an NCO and felony assault in violation of an NCO violate double jeopardy protections because they are both based on the same unit of conduct: his presence at K.S.'s home on February 2, 2019. We accept the State's concession on this issue.

Federal and state constitutional double jeopardy protections prevent multiple punishments for the same offense. State v. Muhammad, 194 Wn.2d 577, 616, 451 P.3d 1060 (2019); CONST. art. I, § 9; U.S. CONST. amend V. We consider the violation of an NCO as one continuous crime while the defendant remains in the prohibited zone. State v. Spencer, 128 Wn. App. 132, 137–38, 114 P.3d 1222 (2005). Without a clear legislative intent to permit punishment of multiple offenses, if a jury convicts a defendant on greater and lesser-included offenses, the lesser offense merges into the greater and must be vacated on remand. State v. Turner, 169 Wn.2d 448, 459, 238 P.3d 461 (2010); In re Pers.

Restraint of Strandy, 171 Wn.2d 817, 819–20, 256 P.3d 1159 (2011). The double jeopardy issue here presents a question of law, which we review de novo. Muhammad, 194 Wn.2d at 600.

Traini was convicted under RCW 26.50.110 of misdemeanor violation of an NCO and felony assault in violation of an NCO. RCW 26.50.110(1)(a) states: "a violation of any of the following provisions of the order is a gross misdemeanor, *except as provided in subsection[] (4)* . . . (ii) A provision excluding the person from a residence." (Emphasis added.) RCW 26.50.110(4) provides, "Any assault that is a violation of an order issued under this chapter . . . is a class C felony." "The plain and unambiguous language of RCW 26.50.110 establishes misdemeanor violation of a no-contact order is a lesser included offense of felony violation of a no-contact order." State v. Melland, 9 Wn. App. 2d 786, 814, 452 P.3d 562 (2019). Double jeopardy protections prohibit two separate convictions when one crime is a lesser offense of the other. In re Pers. Restraint of Knight, 2020 WL 5949872, at *6–7. Thus, the two convictions together here violate the double jeopardy clause, and we must vacate the lesser offense.

B. K.S.'s Written Statement

Traini says that the trial court erred in allowing K.S.'s handwritten statement to be read into evidence as a recorded recollection under ER 803(a)(5) because the State did not establish the accuracy of the prior statement. We conclude that the trial court did not abuse its discretion in doing so.

Evidence may be read into evidence as a recorded recollection under ER 803(a)(5) if it is:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly.

When examining whether a statement accurately reflects the witness's prior knowledge, the trial court looks at the totality of the circumstances. In re Det. of Peterson, 197 Wn. App. 722, 727–28, 389 P.3d 780 (2017). This includes: "(1) whether the witness disavows accuracy; (2) whether the witness averred accuracy at the time of making the statement; (3) whether the recording process is reliable; and (4) whether other indicia of reliability establish the trustworthiness of the statement." Id. (quoting State v. Alvarado, 89 Wn. App. 543, 552, 949 P.2d 831 (1998)). "[T]he requirement that a recorded recollection accurately reflect the witness' knowledge may be satisfied without the witness' direct averment of accuracy at trial." Alvarado, 89 Wn. App. at 551.

We review the admission of statements under ER 803(a)(5) for abuse of discretion. State v. Derouin, 116 Wn. App. 38, 42, 64 P.3d 35 (2003).

Over Traini's objection, the trial court allowed the State to have K.S. read into the record her written statement that she completed on February 2, 2019, as a recorded recollection under ER 803(a)(5). It states that Traini grabbed K.S. by the jaw, causing her "intense pain"; pushed her down onto her bed; and said "it would only take a second" to "end" her life.

Because there are sufficient indicia of reliability, the trial court did not abuse its discretion in allowing the statement to be read into evidence. First, the top of the form encouraged accurate reporting: "Please answer the following questions fully and accurately and to the best of your knowledge." Second, K.S. completed the statement herself and Officer Holt was not in the room as she did so. Third, K.S. identified the handwriting as her own. See Peterson, 197 Wn. App. at 729–30 (that the witness testified that the statement was in her handwriting indicated the reliability of the admitted statement). And fourth, the 911 call during which K.S. cried and said Traini attacked her corroborates the statement. See State v. White, 152 Wn. App. 173, 186, 215 P.3d 251 (2009) (noting that the fact that the witness identified the defendant as her attacker on a 911 call supported the accuracy of the recorded statement).

Traini argues that K.S.'s refusal to sign the written statement constitutes a disavowal of its contents. Officer Holt testified that when he had K.S. fill out the statement, he did not notice that the second page, which included a line for a signature affirming the contents as true and correct, did not print and thus the statement was not signed. When a supervisor brought this to his attention a week later, he went to K.S.'s house and requested she sign her statement. She refused. At trial, she explained that she did not sign it because she "didn't want anything to happen." She also said she did not want to be "held to" the report. While Traini argues that her refusal to sign the statement reflects a disavowal of its accuracy, it could also be interpreted to reflect her desire that the State not file

6

charges. And no Washington authority holds that the omission of a signature, or a refusal to sign, is determinative as to accuracy.

Traini also argues that because K.S. recanted some of her prior statements at trial and did not want the State to file charges, the trial court abused its discretion in allowing the statement to be read into the record. During trial, the State asked K.S., "[A]t the time you made the statement, you intended to make a truthful statement?" She responded, "Yes." But while questioning K.S. as to why some questions had been left blank,[1] defense counsel asked, "[W]ere you trying to be accurate and truthful when you wrote this?" And she responded, "I suppose not," explaining that she had felt pressured to fill out the form by Officer Holt. But shortly after, outside the presence of the jury, the State asked K.S. whether her intention was to truthfully record what happened, to which she replied, "Yes." Though K.S.'s testimony seemed inconsistent at times, she never explicitly disavowed the written statement.

Given the foregoing, and the totality of the circumstances, the trial court did not abuse its discretion in allowing the statement to be read into evidence under ER 803(a)(5).[2]

C. Prosecutorial Misconduct

Traini claims prosecutorial misconduct. He points to the State's comments during closing argument about bringing order to the community and

---

[1] Specifically, questions 4 and 5 about when and where the incident occurred.
[2] Given our conclusion, we do not reach the issue of harmless error.

the defense counsel using "the oldest trick in the book." Traini did not object to these comments at trial. The State argues that the comments did not amount to misconduct, and even if they did, they were not so flagrant and ill-intentioned that instructions could not have cured any resulting prejudice. We conclude that the comments do not warrant reversal.

A prosecutor must ensure that they do not violate a defendant's rights to a constitutionally fair trial. State v. Monday, 171 Wn.2d 667, 676, 257 P.3d 551 (2011). "A prosecutor's closing argument should be free of appeals to passion and prejudice, and be confined to the evidence." State v. Prado, 144 Wn. App. 227, 253, 181 P.3d 901 (2008).

To establish misconduct, the defendant bears the burden of first showing that the prosecutor's comments were improper. State v. Boyd, 1 Wn. App. 2d 501, 517–18, 408 P.3d 362 (2017); State v. Emery, 174 Wn.2d 741, 759, 278 P.3d 653 (2012).

> Once a defendant establishes that a prosecutor's statements are improper, we determine whether the defendant was prejudiced under one of two standards of review. If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. If the defendant did not object at trial, the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice.

Emery, 174 Wn.2d at 760–61 (citation omitted). If defense counsel fails to object to allegedly improper comments made by a prosecutor, it "strongly suggests" that the comments "did not appear critically prejudicial to [the defendant] in the

8

context of the trial." State v. McKenzie, 157 Wn.2d 44, 53 n.2, 134 P.3d 221 (2006) (emphasis omitted) (quoting State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990)). We do not examine improper conduct in isolation, but determine its effect by looking at "the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" Monday, 171 Wn.2d at 675 (internal quotation marks omitted) (quoting McKenzie, 157 Wn.2d at 52).

Assuming, without deciding, that the State's comments were improper, we conclude that they were not so flagrant and ill-intentioned that instructions could not have cured any resulting prejudice.

1. "Help bring order to our community"

Near the end of the opening segment of its closing argument, the State said: "So please, when you go to deliberate, help bring order to our community. Make the judge's orders enforceable." Two Washington cases help guide our analysis.

In State v. Ramos, we held that the prosecutor's comments about protecting the community from the defendant's continuous drug dealing was prejudicial and that an instruction would not have cured the prejudicial effect. 164 Wn. App. 327, 340–41, 263 P.3d 1268 (2011). In that case, "[a]t the beginning of closing argument, the prosecutor urged the jury to act on behalf of

9

the community and stop Ramos from continuing to sell cocaine at Sunset

Square." Id. at 332–33. The prosecutor said:

> You have actually seen videotape of drug activity in this community. Most of you had no idea what is going on and probably wish you didn't know it was going on. But the events that are depicted in the video you saw this morning of March 25th of 2009 is [sic] why the detectives were out there at that parking lot on that date to investigate drug crimes. *This is also why we are here today, so people can go out there and buy some groceries at the Cost Cutter or go to a movie at the Sunset Square and not have to wade past the coke dealers in the parking lot. That's why they were there, that's why you're here, and that's why I'm here, to stop Mr. Ramos from continuing that line of activities. That's what the case is about* . . . .

Id. at 338 (emphasis added). The State conceded that the prosecutor engaged

in impermissible argument. Id. at 337. And we observed that the "prosecutor's

improper comments were made at the beginning of closing argument as a prism

through which the jury should view the evidence." Id. at 340. We thus concluded

that an instruction could not have cured the prejudicial effect of the argument. Id.

In contrast, in State v. Bautista-Caldera, we held that a curative instruction

would have addressed any prejudice resulting from the prosecutor's pleas that

the jury send a message to society about the general problem of child sexual

abuse. 56 Wn. App. 186, 195, 783 P.2d 116 (1989). We noted that the

prosecutor otherwise urged the jury to reach its decision based on the evidence

presented, and that the improper comments were not extensive or egregious. Id.

Here, the State's comment was isolated. Unlike in Ramos, the State did

not offer the comment at the beginning of closing as a prism through which the

jury should view the evidence; nor did the State's comments specifically focus on

10

Traini's future potential conduct. And as in <u>Bautista-Caldera</u>, the State urged the jury to base its decision on the evidence presented and apply the law as presented by the judge. That Traini did not object to the comment strongly suggests the defense did not view the comment as critically prejudicial during trial. <u>See</u> <u>McKenzie</u>, 157 Wn.2d at 53 n.2 (emphasis omitted). We conclude that the comment was not so flagrant and ill-intentioned that an instruction to the jury to disregard it could not have cured any prejudice.

2. "Oldest trick in the book"

In its rebuttal during closing argument, the State commented on the defense's closing argument in which defense counsel posed a series of unanswered questions that the jury should seek answers to. The State said, "Now, this — these questions, this is the oldest trick in the book. Ask the opposing counsel to answer all these questions that don't matter." Again, two Washington cases guide our analysis.

In <u>Boyd</u>, we held that there was no substantial likelihood that referring to defense counsel's argument as "bla, bla, bla" affected the jury's verdict. 1 Wn. App. 2d at 520. This court noted that the improper comments were minimal and were not mocking or derogatory. <u>Id.</u> at 521.

In <u>State v. Warren</u>, the prosecutor told the jury that defense counsel's argument was a "classic example of taking these facts and completely twisting them to their own benefit, and hoping that you are not smart enough to figure out what in fact they are doing." 165 Wn.2d 17, 29, 195 P.3d 940 (2008). The court

11

concluded that the prosecutor's comments were "not so flagrant and ill-intentioned that no instruction could have cured them" and the defendant failed to show prejudice. Id. at 29–30.

Here, an instruction could have cured any prejudice resulting from the State's comment. See State v. Thorgerson, 172 Wn. 2d 438, 451–52, 258 P.3d 43 (2011) (holding that a curative instruction would have alleviated any prejudicial effect of the "sleight of hand" comment). As in Warren, the comment accused the defense counsel of using a well-known tactic and distorting the case for their own benefit. And as in Boyd, the comment was merely dismissive of the defense counsel's argument, but it was not mocking or derogatory. Again, the fact that Traini did not object at trial strongly suggests the defense did not view the comment as critically prejudicial during trial. See McKenzie, 157 Wn.2d at 53 n.2 (emphasis omitted). We conclude that the comment was not so flagrant and ill-intentioned that an instruction to the jury to disregard the comment could not have cured any prejudice.

D. Legal Financial Obligations (LFOs)

Because we are vacating the misdemeanor conviction, as the State concedes, the $500 discretionary fine no longer applies.[3] But we decline to address the $100 domestic violence assessment LFO as Traini did not raise this argument in his opening brief. Cowiche Canyon Conservancy v. Bosley, 118

---

[3] The trial court also imposed a $500 victim assessment fee. Traini does not assign error to this LFO.

Wn.2d 801, 809, 828 P.2d 549 (1992) (an issue raised and argued for the first time in a reply brief is too late to warrant consideration).

We affirm in part and vacate the misdemeanor conviction.

Chun, J.

WE CONCUR:

Brennan, J.                Verellen, J.