[No. 18255-2-I.   Division One.   May 28, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. DONALD LEROY MATHES, *Appellant.*

*John R. Christiansen* of *Washington Appellate De-*

*fender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Ann M. Bremner, Deputy,* for respondent.

COLEMAN, J.—Donald L. Mathes appeals his conviction for second degree burglary. We affirm.

On August 21, 1985, two apartments in the Clubhouse apartment complex were burglarized. Dusting of the doors through which the burglar gained entry produced prints of Donald Mathes. Mathes was also seen in the area about the time of the burglary. On September 9, 1985, a police report was made in which Kerry Paro stated that she found credit cards and other items taken in the burglary. The report stated that when Paro confronted Mathes with these items, he admitted ripping off the apartments.

On February 3, 1986, Mathes was tried in juvenile court and convicted of second degree burglary. Mathes filed a timely appeal.

The sole issue presented is whether the trial court erred in admitting a portion of the police report as a recorded recollection under ER 803(a)(5).

On direct examination, Paro stated that appellant told her he had ripped off an apartment and gotten $26.

Q. [Direct examination of Kerry Paro by Ms. Bremner] Was he a friend of yours?
A. Yes, he was.
Q. Did he ever tell you about anything that he had done illegal in the apartments?
A. Once, he told me about it. He said he ripped off somebody's apartment.
Q. When abouts did he tell you that?
A. It was before I went to school. I started school September 4. So, it was before I went to school.
Q. Long before that?
A. No, not long before that, probably, within two weeks before.
Q. And when he said he ripped off one of the apartments, was he talking about one of the apartments in the Club House buildings?
A. Yes, he was.

Q. What did he say he got out of ripping–off the apartment?

A. He didn't. He just said he ripped–off an apartment.

Q. He didn't say anything about cash?

A. $26.00, that's it.

Q. Is what he got?

A. Yeah.

When asked if Paro had told appellant about the credit cards she found, she could not remember what he said about them.

Q. [Direct examination of Paro by Ms. Bremner] Did you ever talk to Donald Mathes about these cards, that you guys had found them?

A. Once.

Q. What did he say?

A. I just told him that I had seen some property from somebody's purse or something that I had found with Danielle and that's all I mentioned to him.

Q. What did he say about that?

A. Nothing, really.

Q. Did he say he knew those—

Ms. GARBERDING: Objection, asked and answered.

Q. Did he say anything—you said, nothing really; did he say anything about it?

A. I don't remember, really.

On cross examination, Paro was asked about the statement she had given in the police report.

Q. [Cross examination of Paro by Ms. Garberding] Now, Kerry, you gave a statement to the police on September 9, is that right?

A. Yes.

Q. In that statement, you indicate that, and I'll quote, "About three weeks ago, Donald Mathes told me that he 'ripped somebody off in the D buil[d]ing.'" Is that right?

A. Yes.

Q. And you told the police that, is that right?

A. Yes, I did.

On redirect, the police report was admitted into evidence as a recorded recollection under ER 803(a)(5).

Q. [Redirect of Paro by Ms. Bremner] When you gave this, do you remember telling the police officer—

Ms. GARBERDING: Objection; I think this goes beyond the scope of cross.

THE COURT: You may ask your question. She may ask her question; it's within the cross.

Q. When you gave your statement—you remember being asked about it just now, about the statement you made?

A. Yes.

Q. And when you gave it things were fresh in your mind, right?

A. Uh huh.

Q. Do you remember telling the officer about—right here in the statement that you told Donald about this property you found; he told you he threw it out in the woods after ripping off the apartment. Do you remember saying that now?

A. I remember telling Don about some property that I've seen.

Q. Okay. Do you remember when you gave your statement, you told your officer that Don said that's the property he took?

A. I don't remember that.

Q. But at the time you gave your statement, this was fresh in your mind?

A. Yes.

Ms. BREMNER: Your Honor, I ask that, if I could—have this read into the record under 803 as a recorded recollection. She's stated that she recalled things at the time and at the time of her statement gave—told the officer that Donald had identified that property as what he took in the burglary.

THE COURT: Any response from defense?

Ms. GARBERDING: Yes, *I don't believe the part of the statement that the State is trying to enter is properly authenticated, because this witness has no independent recollection of it at this point. I think that throws doubt on whether or not it was true at the time it was made.*

THE COURT: You're offering it on the—

Ms. BREMNER: 803(a)(5).

THE COURT: It may be admitted under that evidence rule.

Ms. BREMNER: Thank you, your Honor. I have no further questions.

Ms. GARBERDING: I've nothing further.

THE COURT: Very well, the witness may be excused.

(Italics ours.)

It is apparent from this colloquy that appellant's sole basis for objection was that the statement was not authenticated *because the witness had no independent recollection of it.* ER 803(a)(5) provides:

*Recorded Recollection.* A memorandum or record concerning a matter about which a witness once had knowledge but *now has insufficient recollection to enable him to testify fully* and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

(Italics ours.) Since the basis of the objection would not preclude admission, the trial court did not err by admitting the statement as a recorded recollection.

■ On appeal, appellant argues that the authentication requirements of ER 803(a)(5) have not been met and cites 5A K. Tegland, Wash. Prac. § 368 (2d ed. 1982).

The rule has essentially four requirements: (1) the record must pertain to a matter about which the witness once had knowledge; (2) the witness must now have an insufficient recollection about the matter to enable him to testify fully and accurately; (3) the record must have been made or adopted by the witness when the matter was fresh in the witness's memory; and (4) the record must reflect the witness's prior knowledge accurately. The existence of these requirements is determined by the judge under Rule 104(a).

(Footnote omitted.) K. Tegland, at 226.

The fourth requirement, that the record accurately reflect the witness's prior knowledge, may be satisfied by the witness's testimony that he presently remembers that he correctly recorded the fact or that he recognizes the writing as accurate. *Short of this ideal foundation, it is*

*sufficient for the witness to state that he* habitually records such matters accurately or checks them for accuracy, or *even that he recognizes his signature and that he would not have signed an inaccurate memorandum.*

(Footnotes omitted. Italics ours.) K. Tegland, at 228. Appellant states that the failure of requirement (4) is the basis of his appeal. He argues that the police report in this case was not signed by Paro; therefore, it was not authenticated as a true statement of her prior knowledge. Appellant, however, may only argue to the appellate court the specific grounds for the objection made at trial; therefore, this court will not consider an argument presented by appellant for the first time on appeal. *State v. Guloy,* 104 Wn.2d 412, 422, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020, 89 L. Ed. 2d 321, 106 S. Ct. 1208 (1986). Since appellant's specific objection on appeal is not the objection that was argued to the trial court, appellant has lost the opportunity for review.[1]

Affirmed.

SCHOLFIELD, C.J., concurs.

RINGOLD, J. (concurring)—I concur in the result, but would hold it was error to admit the statements into evidence. The record does not reflect the witness's "knowledge correctly." ER 803(a)(5). The majority opinion seems to concede this, but asserts that defendant's objection was inadequate to preserve the issue on appeal.

The objection is directed specifically to the requirements

---

[1]Evidence admitted under ER 803(a)(5) may be read into evidence in pertinent part, not admitted into evidence as a whole. *Wilson v. Key Tronic Corp.,* 40 Wn. App. 802, 814, 701 P.2d 518 (1985). This court need not address the question of whether the trial court erred by admitting the police report as an exhibit in violation of ER 803(a)(5) because appellant neither objected at trial nor raised it on appeal. Even if the objection had been raised, it would have been nonconstitutional harmless error because the outcome of the trial would not have been materially affected. *State v. Robtoy,* 98 Wn.2d 30, 44, 653 P.2d 284 (1982). The admissible evidence showed that appellant's fingerprints matched at both points of entry, a witness testified that appellant admitted the crime, and appellant was seen in the area around the time of the crime.

of ER 803(a)(5). Defense counsel's objections were: (1) "it is not properly authenticated"; and (2) the procedure followed "throws doubt on whether [the statement] was true at the time it was made." The law is not so mechanical that it requires the pronouncement of the magic "sesame" to open the door to appellate consideration. We have long held that "'[o]bjections must be accompanied by a reasonably definite statement of the grounds therefor so that the judge may understand the question raised and the adversary may be afforded an opportunity to remedy the claimed defect.'" *State v. Boast*, 87 Wn.2d 447, 451, 553 P.2d 1322 (1976) (quoting *Presnell v. Safeway Stores, Inc.*, 60 Wn.2d 671, 675, 374 P.2d 939 (1962)). Courts have deemed objections to be sufficiently specific so as to allow appellate review even when the objections at trial were not ideal. *See State v. Guloy*, 104 Wn.2d 412, 423, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020, 89 L. Ed. 2d 321, 106 S. Ct. 1208 (1986).

It is difficult to believe that the trial court was ignorant of the basis of the objection. The police report was not signed by Kerry Paro, she did not remember giving the statement, and the State did not follow the procedure recommended by 5A K. Tegland, Wash. Prac. § 368, at 230 (2d ed. 1982). The prosecutor's answer to the court's inquiry makes it unmistakable that both counsel and the trial judge were considering the requirements of ER 803(a)(5):

> THE COURT: You're offering it on the—
> Ms. BREMNER: 803(a)(5).

I would, however, affirm. The case sub judice was tried without a jury in juvenile court. The trial judge entered findings of fact supported by substantial evidence. Even though it was error to admit the statements into evidence, an accused cannot avail himself of error as a ground for reversal unless it has been prejudicial. *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980). As the error is not of constitutional magnitude the nonconstitutional error standard applies. Under that standard the error is

harmless unless it can be shown that within reasonable probabilities the outcome of the trial would have been materially affected had it not occurred. *State v. Crenshaw,* 98 Wn.2d 789, 659 P.2d 488 (1983). After reviewing the record, I am convinced the outcome of the trial would not have been different had the statement been excluded. I, therefore, concur in the result reached by the majority and would affirm.