[Nos. 36619-0-I; 36624-6-I.  Division One.  January 20, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL ALVARADO, ET AL., *Appellants*.

*Thomas M. Kummerow* of *Washington Appellate Project*; *John Henry Browne* of *Browne & Ressler*; and *Rita J. Griffith*, for appellants.

*Norm Maleng, Prosecuting Attorney*, and *Howard P. Schneiderman, Deputy*, for respondent.

ELLINGTON, J. — We here consider whether the foundation requirements for admission of recorded recollections necessarily include the declarant's trial testimony that the statements were true when made. We hold that under certain circumstances, other indicia of reliability may achieve that purpose.

Early one morning in Seattle, six men left a party and went for a walk. One, Reynaldo Capetillo, was murdered by two of the others. The remaining three were witnesses. One of the witnesses, Louis Lopez, made tape-recorded statements to the police that implicated both defendants in the murder. At trial, however, Lopez testified that he could neither remember any of the events surrounding the murder nor verify that his statements had been accurate. His tape-recorded statements were then admitted as recorded recollections.

The precise issue on appeal is whether the defendants received ineffective assistance of counsel because their attorneys did not challenge the foundation for admission of the taped statements as recorded recollections under ER 803(a)(5). An ineffective assistance of counsel claim requires a showing of deficient performance. No such showing is made here.

## Facts

Michael Alvarado, Ramon Barrientes, Reynaldo Capetillo,

Terry Jenkins, Louis Lopez, and Michael Risedorf attended a party. During this party, Capetillo bragged about being a member of a gang, the United Latinos. Unknown to Capetillo, a relative of Barrientes had recently been assaulted by a United Latinos member. On Alvarado's suggestion, he, Barrientes, Capetillo, and Jenkins went for a walk at four in the morning; Lopez and Risedorf followed them. As they walked across a pedestrian overpass, Alvarado assaulted Capetillo repeatedly with a steak knife. Barrientes then shot Capetillo dead. The police recovered the knife and found Alvarado's palmprint on it. Alvarado confessed to stabbing Capetillo, although he later denied it.

The murder occurred near the center of the overpass. Jenkins and Risedorf told the police (and later testified) that they either heard or saw the murder from the side of the overpass. Lopez made three tape-recorded statements. In the first, he denied any knowledge of the crime. In the second and third, however, he told police that he witnessed the murder, that he saw the defendants assault Capetillo, and that Barrientes said he shot Capetillo in retaliation for an assault perpetrated by the United Latinos on Barrientes' cousin. In his second and third statements, Lopez explained that he provided no information in his first statement because he feared the defendants. In his third statement, Lopez asserted that all the information he had related was true.

Lopez's memory later proved faulty. In pretrial hearings, Lopez testified that he could not remember making some of these statements and denied making others, and didn't "really remember being on the overpass." Anticipating that his trial testimony would be similar, the State moved to admit Lopez's statements as recorded recollections under ER 803(a)(5). The parties therefore began to compare Lopez's pretrial testimony with his tape-recorded statements to decide which would constitute substantive evidence under ER 803(a)(5), i.e., those statements that Lopez could not remember, and which would constitute only impeachment evidence under ER 607 and 608, i.e., those

statements that Lopez denied. The parties and the court recognized, however, that Lopez's ultimate testimony at trial would determine what parts of the statements were admissible and for what purposes.

At trial, Lopez testified that he did not recall the incident at all. He remembered that the police recorded his statements, but testified: "I was so confused over the statement. Everybody had been telling me bits and pieces, so I couldn't really say it was true or not." The court ruled that since Lopez testified he could not remember anything that occurred on the overpass, his statements were admissible as recorded recollections. Alvarado's counsel agreed with this ruling. Barrientes' counsel was silent.

The parties stipulated that some portions of the statements should be redacted based on prior rulings. Barrientes made two hearsay objections that were sustained, so additional material was removed. The redacted recordings were then played to the jury as substantive evidence under ER 803(a)(5).

At trial, Alvarado denied that he ever confessed to stabbing Capetillo, and testified he was nowhere near the scene. Barrientes testified that Lopez shot Capetillo. During deliberations, the jury requested to hear the tapes again, and the tapes were played in the courtroom with all parties present. Neither defense counsel objected to replaying the tapes. The jury found both defendants guilty of first degree murder.

## Discussion

Barrientes and Alvarado claim that Lopez's statements should not have been admitted as recorded recollections because a proper foundation was not laid under ER 803(a)(5).[1] Because no such objection was made at trial, the question on appeal is whether the failure to make this objection constituted ineffective assistance of counsel.

---

[1]In relevant part, the rule provides:

**RULE 803. HEARSAY EXCEPTIONS; AVAILABILITY OF DECLARANT IMMATERIAL**

An ineffective assistance claim requires a showing of deficient performance and resulting prejudice. Deficient performance is that which falls below an objective reasonableness standard. Prejudice is defined as a reasonable probability that the outcome would have been different had counsel's representation been within reasonable standards. *See, e.g., State v. Stenson*, 132 Wn.2d 668, 705-06, 940 P.2d 1239 (1997); *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Because a legitimate trial strategy cannot be categorized as deficient performance, such a strategy cannot provide the foundation for an ineffective assistance claim. *State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 177 (1991). The defendant must therefore show an absence of legitimate strategic reasons to support the challenged conduct. *McFarland*, 127 Wn.2d at 336.

The admission of statements under ER 803(a)(5) is reviewed for an abuse of discretion. *See State v. Castellanos*, 132 Wn.2d 94, 97, 935 P.2d 1353 (1997); 5B KARL B. TEGLAND, WASHINGTON PRACTICE § 368, at 186 (3d ed. 1989); *State v. Strauss*, 119 Wn.2d 401, 416, 832 P.2d 78 (1992). Admission is proper when the following factors are met: (1) the record pertains to a matter about which the witness once had knowledge; (2) the witness has an insufficient recollection of the matter to provide truthful and accurate trial testimony; (3) the record was made or adopted by the witness when the matter was fresh in the witness' memory; and (4) the record reflects the witness' prior knowledge accurately. *See State v. Mathes*, 47 Wn. App. 863, 867-68, 737 P.2d 700 (1987); ER 803(a)(5).

---

(a) Specific Exceptions. The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(5) *Recorded Recollection*. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

ER 803(a)(5).

The recordings here are taped statements made within eight days of the murder. Their content establishes that Lopez had knowledge of the events when the recordings were made. At trial, he testified that he could not remember the events. The recordings are Lopez's own words and thus were made and adopted by him. The first three factors therefore are easily met.

At issue here is satisfaction of the final factor: whether the recordings accurately reflect Lopez's prior knowledge. The rule itself prescribes no particular manner for answering this inquiry. Rather, the rule states the requirement passively, asking whether the record or memorandum has been "shown . . . to reflect [the witness' prior ] . . . knowledge correctly." ER 803(a)(5).

Only one Washington case, *State v. Mathes*, 47 Wn. App. 863, 867-68, 737 P.2d 700 (1987), discusses the scope of the "prior knowledge" factor in detail. The issue in *Mathes* was admission of a police report purporting to memorialize the statements of a witness who claimed that Mathes had confessed to burglarizing apartments. At trial, however, the witness could not recall Mathes' confession, testifying first that Mathes said "[n]othing, really[,]" and then that she did not remember. The prosecutor moved to read the report into the record as a recorded recollection. The defense objected that the document was not properly authenticated because the witness had no independent recollection of it. The objection was overruled. *Mathes*, 47 Wn. App. at 864-66.

On appeal, Mathes argued that ER 803(a)(5)'s admission requirements were not met because, since the report was not signed by the witness, it was not authenticated as a true statement of her prior knowledge. The majority refused to consider this issue for lack of a specific trial objection. *Mathes*, 47 Wn. App. at 867-68. In a concurring opinion, Judge Ringold took the position that the trial objection was sufficiently specific, and that the report should have been excluded because it had not been shown to "reflect the witness's 'knowledge correctly.' " *Mathes*, 47 Wn. App. at 868 (Ringold, J., concurring).

One commentator has agreed with the concurrence, noting that "[n]ormally the witness testifies that, despite lack of memory, he [or she] remembers making the statement and that it was accurate when made." ROBERT H. ARONSON, THE LAW OF EVIDENCE IN WASHINGTON 803-35.0 (1994).[2] Tegland agrees: "The declarant should be required, at trial, to attest to the accuracy of the memorandum or record." 5B KARL B. TEGLAND, WASHINGTON PRACTICE § 368, at 187 (3rd ed. 1989). Tegland notes that the ideal foundation consists of witness testimony that he or she "presently remembers that he [or she] correctly recorded the fact or that he [or she] recognizes the writing as accurate." TEGLAND, *supra*, § 368, at 186.

But what is ideal in theory may be some distance from what is possible in practice. Tegland implicitly acknowledges this, noting that a witness' testimony that he or she habitually records matters accurately, or would not have signed an inaccurate memorandum, may be sufficient in lieu of an ideal foundation. *See* TEGLAND, *supra*, § 368, at 186-87 (test cited with approval by *Mathes* majority, 47 Wn. App. at 867-68). The facts of a particular case may not allow even this much, however, and we conclude the rule does not require it. Indeed, the rule applies regardless of the declarant's availability to testify, and thus apparently does not contemplate that the declarant will always testify, let alone affirmatively vouch for the record's accuracy. We therefore must decide how best to gauge whether the rule has been satisfied in any given case.

Other jurisdictions have generally sanctioned admission of recorded recollections when sufficient indicia of reliability exist under a totality of the circumstances test. For

---

[2]We note that this commentary states that "[t]he [*Mathes*] court held that ER 803(a)(5) was satisfied by [the witness'] testimony that she recalled the events at the time when she made the statement, but did not recall them at the time of trial." ROBERT H. ARONSON, THE LAW OF EVIDENCE IN WASHINGTON 803-35.0 (1994). The *Mathes* court actually made no such holding, because it did not rule on the issue. Nevertheless, the result that Aronson criticizes is precisely the issue presented here: whether admission is proper without the "[n]ormal[ ] . . . testi[mony] that, despite lack of memory, [the witness] remembers making the statement and that it was accurate when made." ARONSON, *supra*, at 803-35.0.

example, a case similar to that presented here arose in *State v. Marcy*, 165 Vt. 89, 680 A.2d 76 (1996). In that case, an assault victim gave a tape-recorded statement to the police within one day of the crime. At trial, however, the victim testified that she did not remember the assault and that she could not vouch for the accuracy of her statement because she was taking medication when she gave it. The trial court nevertheless admitted the statement as a recorded recollection, noting that its reliability was demonstrated by a number of factors: the statement was given in close temporal proximity to the assault; it described the events chronologically and in detail; the witness spoke coherently and logically in giving it; the police officer's interviews with other witnesses corroborated the statement; and the victim never recanted. *Marcy*, 680 A.2d at 78.

In upholding this ruling, the Vermont Supreme Court adopted the reasoning of the Sixth Circuit, which has noted that " '[i]t is not the *sine qua non* of admissibility that the witness actually vouch for the accuracy of the written memorandum.' " *Marcy*, 680 A.2d at 80 (quoting *United States v. Porter*, 986 F.2d 1014, 1017 (6th Cir. 1993)). Rather, because the recorded recollection rule does not prescribe any particular method of establishing whether the record accurately reflects the witness' prior knowledge, the Sixth Circuit held that the issue is best resolved on a case-by-case basis. *See Porter*, 986 F.2d at 1017-18; *Marcy*, 680 A.2d at 79-80. The First Circuit has also acknowledged that certain reports may be admissible despite the author's inability to testify to accuracy when made. *See United States v. Picciandra*, 788 F.2d 39, 42-44 (1st Cir. 1986).

We agree with the *Porter* court's observation that the rule prescribes no particular method of establishing accuracy, and that the issue must be resolved on a case-by-case basis. We hold that the requirement that a recorded recollection accurately reflect the witness' knowledge may be satisfied without the witness' direct averment of accuracy at trial. The court must examine the totality of the

circumstances, including (1) whether the witness disavows accuracy; (2) whether the witness averred accuracy at the time of making the statement; (3) whether the recording process is reliable; and (4) whether other indicia of reliability establish the trustworthiness of the statement.

Turning to the facts of this case, Lopez never recanted or disavowed accuracy of the second or third statement, and he affirmatively asserted their accuracy at the time he made them. There was no suggestion that the tapes do not accurately reflect his statements. These facts all support admission of the second and third statements.

Other indicia of reliability also support admission of the second and third statements. These two statements were given on the same day, eight days after the murder and only two hours apart. They are consistent with each other and reflect a detailed and fairly comprehensive knowledge of the crime. Lopez answered all questions lucidly and at no time suggested that he was unsure of what he remembered. After making the last statement, Lopez acknowledged on the tape that all the information was "true and correct." Finally, the contents of the later statements were corroborated in varying degrees by the physical evidence and testimony of the other witnesses, as well as by Alvarado's confession.

But in his first statement, Lopez denied all knowledge of the crime, thus demonstrating that he is capable of lying. This alone does not render the second and third statements inadmissible.[3] Lopez explained that he denied knowledge because he feared retaliation, a fear he referenced in both later statements. This same fear arguably explains his lack of memory at trial; Lopez did not want to testify and said that his family had ostracized him for giving the statements. The court was entitled to consider these circumstances when evaluating whether the later statements bore

---

[3] It does, however, prevent application of the rationale which might otherwise be available, that a person generally has an incentive to make truthful statements to police. *See United States v. Harris*, 403 U.S. 573, 583-84, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971).

sufficient indicia of reliability. Under the totality of the circumstances, the court was justified in concluding that the second and third recordings accurately reflected Lopez's knowledge when they were made.

■■ The first statement does not have sufficient indicia of reliability because Lopez admitted that it was untrue. Nevertheless, the first statement was properly admitted under the rule of completeness, because the statement provided a context from which defense counsel could assail Lopez's credibility. *See* ER 106. In fact, when conducting the pretrial ER 803(a)(5) evaluation of Lopez's statements, the court commented that it anticipated a defense motion to admit the first statement under the rule of completeness. Both defendants were represented by able and experienced counsel; neither contradicted the court's expectation. Failure to challenge the admission of the first statement would have been a valid tactical decision, and cannot provide the basis for an ineffective assistance claim.

Defendants' attorneys' failure to make foundation objections to Lopez's recorded statements was not deficient performance because the first statement was admissible under the rule of completeness, and the second and third were properly admitted as recorded recollections under ER 803(a)(5).

Affirmed.

The remainder of this opinion has no precedential value and will be filed according to the rules of the court. *See* RCW 2.06.040; RAP 10.4(h).

BAKER, C.J., and GROSSE, J., concur.

Review denied at 135 Wn.2d 1014 (1998).