[No. 47661-4-II.   Division Two.   January 31, 2017.]

*In the Matter of the Detention of* JOSEPH M. PETERSON.

*Casey Grannis* (of *Nielsen Broman & Koch PLLC*), for appellant.

*Robert W. Ferguson, Attorney General, Mary E. Robnett* and *Brooke E. Burbank, Managing Assistants*, for respondent.

¶1 SUTTON, J. — Joseph M. Peterson appeals from the trial court's order concluding that his second degree assault conviction is a sexually violent offense for the purpose of civil commitment for sexually violent predators (SVP) under chapter 71.09 RCW. Peterson argues that the trial court erred by admitting the victim's statements as recorded recollections under ER 803(a)(5). We hold that the trial court did not err by admitting the victim's recorded recollections under ER 803(a)(5). Accordingly, we affirm the trial court.

## FACTS

¶2 On March 29, 2013, the State filed a petition seeking Peterson's involuntary commitment as an SVP. The petition

alleged that on July 2, 2007, Peterson was convicted of second degree assault and that the assault was sexually motivated because the charges originated from a rape complaint. Therefore, Peterson's second degree assault conviction met the criteria for a sexually violent offense under RCW 71.09.020(17)(c). The petition also alleged that Peterson met the other criteria for an SVP.

¶3 Peterson and the State stipulated that Peterson's SVP trial would be bifurcated. First, a bench trial would be held to allow the trial court to determine whether Peterson's second degree assault conviction was a sexually violent offense. Second, if the trial court determined that Peterson's second degree assault conviction was a sexually violent offense, the remaining issues in the SVP petition would be tried to a jury.

¶4 The State moved to admit two of H.L.'s[1] statements as recorded recollections under ER 803(a)(5) to establish that the second degree assault was sexually motivated. Specifically, the State moved to admit H.L.'s handwritten statement given to detectives on the date of the incident and H.L.'s tape recorded statement given to detectives six days after the incident.

¶5 At the hearing, H.L. testified that she had experienced memory loss and could not recall the events surrounding the 2007 assault. When asked to review her handwritten statement, H.L. testified that she recognized her handwriting but that she did not remember writing the statement. She also testified that she believed that what she wrote was true because "my memory was there at that time, and I would have been able to recall exactly what had happened." 1 Verbatim Report of Proceedings (VRP) at 79. H.L. also testified that she remembered going to give a recorded statement to the police, but she could not remember the conversation itself. H.L. testified that she believed

---

[1] H.L. is the victim in the assault, and we use initials to protect the victim's privacy.

her recorded statement was also true and accurate. She also testified, "I have nothing to gain from making up a story. To me, it doesn't seem like it would be smart." 1 VRP at 81. Finally, H.L. testified that she had not ever recanted or denied her statements.

¶6 The State also presented the testimony of Detective Kim Holmes of the Lakewood Police Department, who was the detective assigned to investigate H.L.'s rape complaint. Holmes also testified that the recording accurately reflected her memory of the interview.

¶7 Peterson objected to the admission of H.L.'s statements, arguing that they did not meet the requirements of ER 803(a)(5) for recorded recollections. Peterson presented testimony from Detective Holmes that showed several inconsistencies between H.L.'s handwritten statement and her recorded statement. Peterson also called two former residents of H.L.'s apartment complex to testify that at the time of the incident, H.L. had a reputation for dishonesty. And, H.L.'s ex-husband, whom H.L. lived with at the time of the incident, also testified that he did not believe her statement that she had been raped.

¶8 The trial court then entered the following findings of fact:

A. Both records pertain to a matter about which [H.L.] once had personal knowledge.

B. [H.L.] now has an insufficient recollection about the matter to testify fully and accurately.

C. The records were made or adopted by [H.L.] when the matter was fresh in her mind.

D. The records reflect [H.L.]'s prior knowledge accurately because:

1. [H.L.] did not disavow the accuracy of her statements.

2. [H.L.] averred accuracy at the time of making the statements.

3. The recording process was reliable for both statements.

4. The totality of the circumstances establish the trustworthiness of the statements.

Clerk's Papers at 312. Based on its findings, the trial court concluded that H.L.'s prior statements were admissible as recorded recollections under ER 803(a)(5).

¶9 After the bench trial, the trial court entered findings of fact and conclusions of law on whether Peterson's second degree assault conviction was a sexually violent offense. The trial court found that Peterson was originally charged with first degree rape but that he had entered a guilty plea to an amended charge of second degree assault. The trial court found that H.L.'s statements regarding the incident were credible and that Peterson's statements were not credible. And, the trial court found that Peterson's actions were committed for his sexual gratification. Based on its findings, the trial court concluded that the State proved, beyond a reasonable doubt, that Peterson has a valid conviction for second degree assault that was committed with sexual motivation. Therefore, the trial court concluded that Peterson had a conviction for a sexually violent offense under RCW 71.09.020(17)(c).

¶10 Peterson's SVP petition then proceeded to a jury trial. The jury found that the State did not meet its burden to prove beyond a reasonable doubt that Peterson was an SVP. Based on the jury's verdict, Peterson was released from confinement. Peterson appeals the trial court's order concluding that his second degree assault conviction is a sexually violent offense.

## ANALYSIS

¶11 Peterson argues that the trial court erred by admitting H.L.'s prior statements as recorded recollections under ER 803(a)(5). The State argues that Peterson's appeal is not appropriately before us because Peterson is not an aggrieved party under RAP 3.1. For the reasons set forth in the unpublished portion of this opinion, we have deter-

mined that Peterson is an aggrieved party. Therefore, we consider the merits of his argument that the trial court erred by admitting the victim's statements under ER 803(a)(5).

¶12 Peterson argues that the trial court abused its discretion by admitting H.L.'s statements because H.L.'s prior statements lack other indicia of reliability. The trial court did not abuse its discretion in finding that H.L.'s statements were admissible as recorded recollections. Accordingly, we affirm.

¶13 We review a trial court's ruling admitting evidence under ER 803(a)(5) for an abuse of discretion. *State v. Alvarado*, 89 Wn. App. 543, 548, 949 P.2d 831 (1998). ER 803(a)(5) states,

> *Recorded Recollection*. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Evidence is admissible under ER 803(a)(5) when

> (1) the record pertains to a matter about which the witness once had knowledge; (2) the witness has an insufficient recollection of the matter to provide truthful and accurate trial testimony; (3) the record was made or adopted by the witness when the matter was fresh in the witness' memory; and (4) the record reflects the witness' prior knowledge accurately.

*Alvarado*, 89 Wn. App. at 548 (citing *State v. Mathes*, 47 Wn. App. 863, 867-68, 737 P.2d 700 (1987); ER 803(a)(5)). Peterson does not challenge the first three factors. The only issue is whether the recorded recollection reflects H.L.'s prior knowledge accurately.

¶14 When determining whether the record reflects the witness's prior knowledge accurately, the trial court

must examine the totality of the circumstances. *Alvarado*, 89 Wn. App. at 551-52. The totality of the circumstances includes

> (1) whether the witness disavows accuracy; (2) whether the witness averred accuracy at the time of making the statement; (3) whether the recording process is reliable; and (4) whether other indicia of reliability establish the trustworthiness of the statement.

*Alvarado*, 89 Wn. App. at 552. Peterson argues that the facts surrounding H.L.'s statements do not establish other indicia of reliability to support the admission of the statements. Specifically, Peterson relies on inconsistencies in H.L.'s statements, H.L.'s motive to fabricate the allegation of rape, and H.L.'s reputation for dishonesty. However, Peterson's argument actually challenges the credibility of H.L.'s statements, not the accuracy of the recorded recollection, which is required for admission under ER 803(a)(5).

■ ¶15 Washington cases addressing the admissibility of recorded recollections imply a distinction between the accuracy of the recorded recollection itself and the credibility of the witness's statement. *See Alvarado*, 89 Wn. App. at 552; *State v. Derouin*, 116 Wn. App. 38, 44-47, 64 P.3d 35 (2003). The "accuracy" of the record means that the recorded recollection itself accurately states the witness's perceptions of the event. In contrast, "credibility" refers to whether the content of the witness's statement is truthful. For the purposes of ER 803(a)(5), accuracy applies to the record, credibility applies to the content—these are distinctions between form and substance.

■ ¶16 Division I of this court's analysis in *Alvarado* is instructive. There, the court determined that the records admitted by the trial court under ER 803(a)(5) satisfied the accuracy prong even though the witness had demonstrated he was capable of lying and he had made other statements about the incident that he admitted were false. 89 Wn. App. at 552-53. The court also noted that admission of the

witness's conflicting statements "provided a context from which defense counsel could assail [the witness's] credibility." *Alvarado*, 89 Wn. App. at 553. The court's analysis in *Alvarado* demonstrates that a record can be considered accurate for the purposes under ER 803(a)(5) even when a witness's credibility is clearly questionable.

¶17 The appellate court's analysis in *Derouin* provides additional support for the distinction between form and substance under ER 803(a)(5). 116 Wn. App. at 44-47. The court in *Derouin* evaluated the totality of the circumstances, considered whether the recording process was reliable, and noted that the recording process was not ideal because the detective wrote the statement, which the witness then signed under the penalty of perjury. *Derouin*, 116 Wn. App. at 46. The court noted, "Such a recording process makes it more likely that the statement contained inaccuracies or statements flavored by the officer's perception of the events and not the actual witness's perception." *Derouin*, 116 Wn. App. at 46. The court examined whether the record itself accurately reflected the *witness's perceptions*, not whether the perceptions themselves were accurate. *Derouin*, 116 Wn. App. at 46. The court observed, "Any inaccuracies within the statement due to the recording process can be argued at trial and should go to the weight, not the admissibility[,] of the evidence." *Derouin*, 116 Wn. App. at 46. The court's analysis in *Derouin* further supports the distinction between the accuracy of the record itself and the credibility of the witness.

¶18 Here, the trial court properly distinguished between the accuracy of the record itself and the credibility of the witness to determine whether H.L.'s statements were admissible as recorded recollections under ER 803(a)(5). The trial court found that the recording processes were reliable, that H.L. had handwritten her first statement, and that H.L. testified that she recognized her handwriting and signature on the statement. H.L.'s second statements were recorded, and the detective, who was involved in the inter-

view, testified that the recording and transcript accurately reflected the detective's recollection of the interview. The trial court also noted that H.L. never disavowed the statements. And, at the time she made the statements, H.L. averred that the statements were accurate. Given the totality of the circumstances, the trial court did not abuse its discretion in determining that the records accurately reflected H.L.'s statements regarding the incident. Peterson's argument against admission relates to H.L.'s credibility and goes to the weight of the evidence, not to its admissibility. Accordingly, the trial court did not abuse its discretion by admitting H.L.'s prior statements as recorded recollections under ER 803(a)(5).

¶19 A majority of the panel having determined that only the foregoing portion of this opinion will be published in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

WORSWICK and LEE, JJ., concur.

Review denied at 188 Wn.2d 1016 (2017).