# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In Re the Detention of: | No.  47661-4-II |
| JOSEPH M. PETERSON, | |
| Appellant. | PUBLISHED IN PART OPINION |

SUTTON, J. — Joseph M. Peterson appeals from the trial court's order concluding that his second degree assault conviction is a sexually violent offense for the purpose of civil commitment for sexually violent predators (SVP) under chapter 71.09 RCW.  Peterson argues that the trial court erred by admitting the victim's statements as recorded recollections under ER 803(a)(5).  We hold that the trial court did not err by admitting the victim's recorded recollections under ER 803(a)(5).  Accordingly, we affirm the trial court.

## FACTS

On March 29, 2013, the State filed a petition seeking Peterson's involuntary commitment as a SVP.  The petition alleged that, on July 2, 2007, Peterson was convicted of second degree assault and that the assault was sexually motivated because the charges originated from a rape complaint.  Therefore, Peterson's second degree assault conviction met the criteria for a sexually violent offense under RCW 71.09.020(17)(c).  The petition also alleged that Peterson met the other criteria for an SVP.

Peterson and the State stipulated that Peterson's SVP trial would be bifurcated. First, a bench trial would be held to allow the trial court to determine whether Peterson's second degree assault conviction was a sexually violent offense. Second, if the trial court determined that Peterson's second degree assault conviction was a sexually violent offense, the remaining issues in the SVP petition would be tried to a jury.

The State moved to admit two of H.L.'s[1] statements as recorded recollections under ER 803(a)(5) to establish that the second degree assault was sexually motivated. Specifically, the State moved to admit H.L.'s handwritten statement given to detectives on the date of the incident and H.L.'s taped recorded statement given to detectives six days after the incident.

At the hearing, H.L. testified that she had experienced memory loss and could not recall the events surrounding the 2007 assault. When asked to review her handwritten statement, H.L. testified that she recognized her handwriting but that she did not remember writing the statement. She also testified that she believed that what she wrote was true because "my memory was there at that time, and I would have been able to recall exactly what had happened." 1 Verbatim Report of Proceedings (VRP) at 79. H.L. also testified that she remembered going to give a recorded statement to the police, but she could not remember the conversation itself. H.L. testified that she believed her recorded statement was also true and accurate. She also testified, "I have nothing to gain from making up a story. To me, it doesn't seem like it would be smart." 1 VRP at 81. Finally, H.L. testified that she had not ever recanted or denied her statements.

---

[1] H.L. is the victim in the assault and we use initials to protect the victim's privacy.

The State also presented the testimony of Detective Kim Holmes of the Lakewood Police Department, who was the detective assigned to investigate H.L.'s rape complaint. Holmes also testified that the recording accurately reflected her memory of the interview.

Peterson objected to the admission of H.L.'s statements arguing that they did not meet the requirements of ER 803(a)(5) for recorded recollections. Peterson presented testimony from Detective Holmes that showed several inconsistencies between H.L.'s handwritten statement and her recorded statement. Peterson also called two former residents of H.L.'s apartment complex to testify that, at the time of the incident, H.L. had a reputation for dishonesty. And, H.L.'s ex-husband, who H.L. lived with at the time of the incident, also testified that he did not believe her statement that she had been raped.

The trial court then entered the following findings of fact:

A. Both records pertain to a matter about which [H.L.] once had personal knowledge.

B. [H.L.] now has an insufficient recollection about the matter to testify fully and accurately.

C. The records were made or adopted by [H.L.] when the matter was fresh in her mind.

D. The records reflect [H.L.]'s prior knowledge accurately because:

1. [H.L.] did not disavow the accuracy of her statements.
2. [H.L.] averred accuracy at the time of making the statements.
3. The recording process was reliable for both statements.
4. The totality of the circumstances establish the trustworthiness of the statements.

Clerk's Papers (CP) at 312. Based on its findings, the trial court concluded that H.L.'s prior statements were admissible as recorded recollections under ER 803(a)(5).

After the bench trial, the trial court entered findings of fact and conclusions of law on whether Peterson's second degree assault conviction was a sexually violent offense. The trial court

found that Peterson was originally charged with first degree rape, but that he had entered a guilty plea to an amended charge of second degree assault. The trial court found that H.L.'s statements regarding the incident were credible and that Peterson's statements were not credible. And, the trial court found that Peterson's actions were committed for his sexual gratification. Based on its findings, the trial court concluded that the State proved, beyond a reasonable doubt, that Peterson has a valid conviction for second degree assault that was committed with sexual motivation. Therefore, the trial court concluded that Peterson had a conviction for a sexually violent offense under RCW 71.09.020(17)(c).

Peterson's SVP petition then proceeded to a jury trial. The jury found that the State did not meet its burden to prove beyond a reasonable doubt that Peterson was a sexually violent predator. Based on the jury's verdict, Peterson was released from confinement. Peterson appeals the trial court's order concluding that his second degree assault conviction is a sexually violent offense.

ANALYSIS

Peterson argues that the trial court erred by admitting H.L.'s prior statements as recorded recollections under ER 803(a)(5). The State argues that Peterson's appeal is not appropriately before us because Peterson is not an aggrieved party under RAP 3.1. For the reasons set forth in the unpublished portion of this opinion, we have determined that Peterson is an aggrieved party. Therefore, we consider the merits of his argument that the trial court erred by admitting the victim's statements under ER 803(a)(5).

Peterson argues that the trial court abused its discretion by admitting H.L.'s statements because H.L.'s prior statements lack other indicia of reliability. The trial court did not abuse its

4

discretion in finding that H.L.'s statements were admissible as recorded recollections. Accordingly, we affirm.

We review a trial court's ruling admitting evidence under ER 803(a)(5) for an abuse of discretion. *State v. Alvarado*, 89 Wn. App. 543, 548, 949 P.2d 831 (1998). ER 803(a)(5) states,

> *Recorded Recollection.* A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Evidence is admissible under ER 803(a)(5) when:

> (1) the record pertains to a matter about which the witness once had knowledge; (2) the witness has an insufficient recollection of the matter to provide truthful and accurate trial testimony; (3) the record was made or adopted by the witness when the matter was fresh in the witness' memory; and (4) the record reflects the witness' prior knowledge accurately.

*Alvarado*, 89 Wn. App. at 548 (citing *State v. Mathes*, 47 Wn. App. 863, 867-68, 737 P.2d 700 (1987); ER 803(a)(5)). Peterson does not challenge the first three factors. The only issue is whether the recorded recollection reflects H.L.'s prior knowledge accurately.

When determining whether the record reflects the witness's prior knowledge accurately, the trial court must examine the totality of the circumstances. *Alvarado*, 89 Wn. App. at 551-52. The totality of the circumstances includes:

> (1) whether the witness disavows accuracy; (2) whether the witness averred accuracy at the time of making the statement; (3) whether the recording process is reliable; and (4) whether other indicia of reliability establish the trustworthiness of the statement.

*Alvarado*, 89 Wn. App. at 552. Peterson argues that the facts surrounding H.L.'s statements do not establish other indicia of reliability to support the admission of the statements. Specifically, Peterson relies on inconsistencies in H.L.'s statements, H.L.'s motive to fabricate the allegation of rape, and H.L.'s reputation for dishonesty. However, Peterson's argument actually challenges the credibility of H.L.'s statements, not the accuracy of the recorded recollection which is required for admission under ER 803(a)(5).

Washington cases addressing the admissibility of recorded recollections imply a distinction between the accuracy of the recorded recollection itself and the credibility of the witness's statement. *See Alvarado*, 89 Wn. App. at 552; *State v. Derouin*, 116 Wn. App. 38, 44-47, 64 P.3d 35 (2003). The accuracy of the record means that the recorded recollection itself accurately states the witness's perceptions of the event. In contrast, credibility refers to whether the content of the witness's statement is truthful. For the purposes of ER 803(a)(5), accuracy applies to the record, credibility applies to the content–these are distinctions between form and substance.

Division I of this court's analysis in *Alvarado* is instructive. There, the court determined that the records admitted by the trial court under ER 803(a)(5) satisfied the accuracy prong even though the witness had demonstrated he was capable of lying and he had made other statements about the incident that he admitted were false. 89 Wn. App. at 552-53. The court also noted that admission of the witness's conflicting statements "provided a context from which defense counsel could assail [the witness's] credibility." *Alvarado*, 89 Wn. App. at 553. The court's analysis in *Alvarado* demonstrates that a record can be considered accurate for the purposes under ER 803(a)(5) even when a witness's credibility is clearly questionable.

The appellate court's analysis in *Derouin*, provides additional support for the distinction between form and substance under ER 803(a)(5). 116 Wn. App. at 44-47. The court in *Derouin* evaluated the totality of the circumstances, considered whether the recording process was reliable, and noted that the recording process was not ideal because the detective wrote the statement which the witness then signed under the penalty of perjury. *Derouin*, 116 Wn. App. at 46. The court noted, "Such a recording process makes it more likely that the statement contained inaccuracies or statements flavored by the officer's perception of the events and not the actual witness's perceptions." *Derouin*, 116 Wn. App. at 46. The court examined whether the record itself accurately reflected the *witness's perceptions,* not whether the perceptions themselves were accurate. *Derouin*, 116 Wn. App. at 46. The court observed, "Any inaccuracies within the statement due to the recording process can be argued at trial and should go to the weight, not the admissibility of the evidence." *Derouin*, 116 Wn. App. at 46. The court's analysis in *Derouin* further supports the distinction between the accuracy of the record itself and the credibility of the witness.

Here, the trial court properly distinguished between the accuracy of the record itself and the credibility of the witness to determine whether H.L.'s statements were admissible as recorded recollections under ER 803(a)(5). The trial court found that the recording processes were reliable, that H.L. had handwritten her first statement, and that H.L. testified that she recognized her handwriting and signature on the statement. H.L's second statements were recorded and the detective, who was involved in the interview, testified that the recording and transcript accurately reflected the detective's recollection of the interview. The trial court also noted that H.L. never disavowed the statements. And, at the time she made the statements, H.L. averred that the

statements were accurate. Given the totality of the circumstances, the trial court did not abuse its discretion in determining that the records accurately reflected H.L.'s statements regarding the incident. Peterson's argument against admission relates to H.L.'s credibility and goes to the weight of the evidence, not to its admissibility. Accordingly, the trial court did not abuse its discretion by admitting H.L.'s prior statements as recorded recollections under ER 803(a)(5).

A majority of the panel having determined that only the foregoing portion of this opinion will be published in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

ORDER ON SEXUALLY VIOLENT OFFENSE

Peterson assigns error to the trial court's order concluding that his second degree assault conviction is a sexually violent offense under RCW 71.09.020(17)(c). Peterson's argument challenging H.L.'s statements relates to H.L.'s credibility. Because credibility determinations are reserved solely for the trier of fact, Peterson's challenge to the trial court's order fails.

When reviewing a trial court's decision following a bench trial, our review is limited to whether substantial evidence supports any challenged findings of fact and whether the findings support the conclusions of law. *State v. Hovig*, 149 Wn. App. 1, 8, 202 P.3d 318 (2009). Unchallenged findings of fact are verities on appeal. *State v. Madarash*, 116 Wn. App. 500, 509, 66 P.3d 682 (2003). We do not review credibility determinations. *State v. Kaiser*, 161 Wn. App. 705, 724, 254 P.3d 850 (2011). Here, the trial court made a specific finding of fact that H.L. was credible, which finding Peterson challenges. But Peterson's challenge fails because we do not review credibility determinations.

H.L.'s statements regarding the incident establish that Peterson had sexual intercourse with her. The fact that sexual intercourse occurred supports the trial court's conclusion that the assault was committed for Peterson's sexual gratification, making the crime sexually motivated under former RCW 9.94A.030(47).[2] Because the second degree assault was sexually motivated, the trial court properly concluded that Peterson's second degree assault conviction was a sexually violent offense under RCW 71.09.020(17)(c). Accordingly, we affirm the trial court's order concluding that Peterson's second degree assault conviction is a sexually violent offense.

## AGGRIEVED PARTY

The State argues that we should decline to address Peterson's appeal because he is not an aggrieved party as required by RAP 3.1. Specifically, the State argues that Peterson is not aggrieved because a jury decided the ultimate issue in this case–whether Peterson is an SVP–in Peterson's favor and Peterson has been released from confinement. Because the trial court's order legally establishes that the State has proven a predicate sexually violent offense, the trial court's order has continuing legal consequences for Peterson. Accordingly, Peterson is an aggrieved party.

Under RAP 3.1, "[O]nly an aggrieved party may seek review by the appellate court." An aggrieved party is "one whose personal right or pecuniary interests have been affected." *State v. Taylor*, 150 Wn.2d 599, 603, 80 P.3d 605 (2003) (citing *State ex rel. Simeon v. Superior Court for King County*, 20 Wn.2d 88, 90, 145 P.2d 1017 (1944)). An aggrieved party's interest must be

---

[2] Former RCW 9.94A.030(47) (2012), *recodified as* RCW 9.94A.030(48) states,

> "Sexual motivation" means that one of the purposes for which the defendant committed the crime was for the purpose of his or her sexual gratification.

present and substantial rather than contingent. *Tinker v. Kent Gypsum Supply, Inc.*, 95 Wn. App. 761, 764-65, 977 P.2d 627 (1999). "An aggrieved party is not one whose feelings have been hurt or one who is disappointed over a certain result." *Taylor*, 150 Wn.2d at 603. A party may not seek appellate review of an issue on which the party prevailed simply because the party does not agree with the trial court's reasoning. *State v. Alexander*, 125 Wn.2d 717, 721 n.6, 888 P.2d 1169 (1995).

The State argues that Peterson prevailed on the ultimate issue at the trial court–whether he is an SVP–therefore, he is not an aggrieved party entitled to appeal under RAP 3.1. The State relies on *Taylor* to argue that, because the trial court's order has no effect unless the State files a new SVP petition, Peterson is not under any burden or obligation from the trial court's order. We disagree.

In *Taylor*, our Supreme Court held that the defendant was not an aggrieved party entitled to seek discretionary review of the trial court's order dismissing his criminal charges without prejudice. 150 Wn.2d at 603. Specifically, our Supreme Court stated, "Until the State refiles charges against [the defendant], if indeed it does, he is under no restriction, and he has the benefit of a running statute of limitations. We cannot conclude, therefore, that he has been injured in any legal sense." *Taylor*, 150 Wn.2d at 603. However, under the SVP statute, the trial court's order has continuing legal consequences for Peterson. Therefore, the facts of this case are sufficiently distinguishable from those in *Taylor.*

Under chapter 71.09 RCW, the State may involuntary commit a person who is found to be an SVP. A conviction for a crime of sexual violence is a predicate to a finding that a person is an SVP. RCW 71.09.020(18). In many cases, the conviction for a crime of sexual violence itself is

10

sufficient to establish this predicate finding. RCW 71.09.020(17)(a). However, in some cases, such as in Peterson's, a trial court must make a finding of sexual motivation at a commitment hearing before a conviction can be a predicate sexually violent offense. RCW 71.09.020(17)(c). Once the State establishes a predicate sexually violent offense by a person, the State can rely on the trial court's order as a basis to file a new SVP petition. Under RCW 71.09.040, once the State establishes probable cause for an SVP petition, a trial court must hold the person in total confinement pending a trial on the SVP petition.[3]

Here, the trial court's finding, that Peterson's second degree assault conviction is a sexually violent offense, has legal consequences to Peterson. Based on the trial court's order, the State has established a predicate sexually violent offense for the purposes of a SVP petition. RCW 71.09.030(1)(e). Therefore, in this case, the trial court's order provides a basis for the State to file a new SVP petition.

Because the trial court's order has legal consequences, the trial court's order is more analogous to an order in an involuntary commitment proceeding. *See In re Det. of M.K.*, 168 Wn. App. 621, 279 P.3d 897 (2012). In *M.K.*, we addressed whether an appeal was moot after an involuntary commitment period had expired. We held that "it is clear that MK's appeal of his involuntary commitment order is not moot, despite the treatment period in the challenged order having expired, because a trial court presiding over future involuntary commitment hearings may consider MK's prior involuntary commitment orders when making its commitment

---

[3] RCW 71.09.040(4) provides, "If the probable cause determination is made, the judge shall direct that the person be transferred to the custody of the department of social and health services for placement in a total confinement facility operated by the department. In no event shall the person be released from confinement prior to trial."

determination." 168 Wn. App. at 629. Although *M.K.* addressed an issue of mootness, rather than whether the appellant was an aggrieved party, the reasoning is similar. Like an involuntary commitment order, the trial court's order here has a continuing, future effect because the order subjects Peterson to the SVP statute.

Because the trial court's order subjects Peterson to the SVP statute, the order affects his personal right to be free from potential total confinement pending an SVP trial. Although this effect is still contingent on the State filing a new SVP petition, the threat of total confinement pending another SVP trial is substantial. Accordingly, Peterson is an aggrieved party under RAP 3.1.

## CONCLUSION

Peterson is an aggrieved party under RAP 3.1, therefore, we consider the merits of his argument on appeal. The trial court did not abuse its discretion in admitting H.L.'s statements under ER 803(a)(5), and we do not review credibility determinations. Accordingly, we affirm the trial court's order concluding that Peterson's second degree assault conviction is a sexually violent offense.

SUTTON, J.

We concur:

WORSWICK, P.J.

LEE, J.

12